TRAFALGAR HOUSE CONSTRUCTION, INC., Plaintiff Appellant v. MSL ENTERPRISES, INC., d/b/a MSL Enterprises, Defendant Appellee

No. COA97-115

(Filed 6 January 1998)

**1. Arbitration and Award § 42 (NCI4th)— construction arbitration—seven disputed contracts—one award—no explanation requested prior to appointment—motion to modify denied**

The trial court did not err by denying plaintiff's motion to modify an arbitration award arising from a dispute involving seven contracts between a contractor and a masonry subcontractor where the arbitrators entered a single award, defendant

moved to confirm the award, and plaintiff moved to vacate or modify the award to show seven separate awards. Neither party requested an explanation of the award prior to the appointment of the arbitrators, as required by CIAR Rule 42, and plaintiff did not allege in its motion that modification was necessary to correct clerical, typographical, technical or computational errors under CIAR Rule 44. Construction Industry Arbitration Rules procedures are consistent with North Carolina law governing the enforcement of arbitration agreements.

**2. Arbitration and Award § 42 (NCI4th)— construction arbitration—motion to set aside—allegations of fraud—no nexus with award**

The trial court did not err in a dispute between a contractor and a masonry subcontractor by not vacating or setting aside an arbitration award for defendant subcontractor based on allegations that it was procured by fraud and misconduct. The trial court found that plaintiff's evidence did not support plaintiff's allegations of fraud; even if the allegations were true, they were not materially related to an issue in the arbitration proceeding and no nexus was established between the fraud and the award. It is appropriate to interpret N.C.G.S. § 1-567.13 as requiring such a nexus.

Appeal by plaintiff from orders entered 26 July 1996 and 3 December 1996 by Judge F. Gordon Battle in Orange County Superior Court. Heard in the Court of Appeals 18 September 1997.

*Moore & Van Allen, PLLC, by Christopher J. Blake, for plaintiff appellant.*

*Brown & Bunch, by John C. Schafer, for defendant appellee.*

McGEE, Judge.

This dispute arises from the alleged breach of seven contracts entered into by plaintiff, a general contractor, and defendant, a masonry subcontractor, which were submitted to arbitration pursuant to an agreement between the parties. Plaintiff appeals the trial court's 26 July 1996 order to confirm the arbitration award (award) and the 3 December 1996 order denying plaintiff's motion to vacate the award. Plaintiff argues the trial court erred: (1) by confirming a single arbitration award, which was imperfect as a matter of law, because it failed to set out seven separate awards related to each of

the contractual disputes submitted to arbitration; and (2) by denying a motion to set aside the judgment and vacate the award when the judgment and award were obtained by fraud, corruption and other undue means. The parties entered into seven contracts for separate projects in which defendant agreed to "furnish[] and install[] precast concrete erection, masonry and drywall." To allow defendant to expand its operations to perform these contracts, plaintiff advanced defendant money on a weekly basis for the purchase of insurance and machinery and to meet other expenses.

Defendant performed work pursuant to these seven contracts until 30 August 1995 when defendant informed plaintiff by letter that plaintiff's actions, including "late and nonpayment of invoices, [have] forced [the defendant] to no longer be able to continue on [the plaintiff's] projects." Defendant further informed the plaintiff that if plaintiff could "see fit to uphold its end by paying all past due and outstanding invoices [and] completely fund[ing] all outstanding payroll and all outstanding insurance invoices as per [their] agreement, [defendant would] be happy to return to the projects." In response plaintiff, by letter dated 31 August 1995, informed defendant that "[b]y virtue of that letter and [defendant's] failure to continue the North Carolina projects pursuant to its subcontracts with [plaintiff], [plaintiff] exercises its right under Article XII of the subcontracts and terminates the employment of [defendant]."

On 1 September 1995 plaintiff filed a complaint alleging breach of contract, fraud, and unfair and deceptive trade practices. In response, defendant filed a demand for arbitration with the American Arbitration Association [AAA] and moved to compel arbitration. The trial court entered a consent order on 23 October 1995 staying the litigation and referring all claims to arbitration, except those for claim and delivery.

After extensive discovery and an evidentiary hearing, the arbitration panel entered its award on 13 June 1996 in favor of defendant in the amount of $590,736.00 plus costs and further determined that "any projects related to this arbitration with still unpaid invoices as of June 3, 1996 are the responsibility of [plaintiff]." Neither party requested a breakdown of the award with respect to the seven contracts prior to the rendering of the award, and the arbitrators made none. However, on 18 June 1996 after the award was entered, plaintiff requested a "breakdown of the Award between the seven separate subcontracts" in a letter to the AAA. Plaintiff stated that one reason

for the request was that plaintiff "may be entitled to recover all, or some portion of, the Award from one of the owners of the projects or one of the other prime contractors" of the other projects and the form of the existing award "provides no basis for [plaintiff] to make these claims." This request for "modification or explanation" of the Award was denied by the AAA.

After the award was rendered by the arbitrators, defendant filed a motion to confirm the award pursuant to N.C. Gen. Stat. § 1-567.12. Plaintiff filed a responsive motion on 3 July 1996 to vacate the arbitration award on the grounds that the arbitration panel "exceeded its powers" by failing to render separate judgments as to each of the seven contracts. Defendant further moved that "[i]n the alternative, this Court should either modify or correct the award pursuant to N.C. Gen. Stat. § 1-567.14(a)(3) or submit the award to the arbitration panel to correct or modify the award pursuant to [N.C. Gen. Stat. § 1-567.10]." On 26 July 1996 the trial court denied plaintiff's motion and entered an order confirming the award, which plaintiff timely appeals.

Plaintiff filed another motion on 12 September 1996 to set aside the judgment and the order confirming the award and to vacate the award on the grounds of fraud. After conducting an evidentiary hearing the trial court found that plaintiff:

(1) has failed to establish that the award and judgment in this case were procured by corruption, fraud or other undue means.

(2) [t]he alleged fraud and wrongful conduct was discoverable upon the exercise of due diligence prior to or during the arbitration hearing.

(3) [t]he alleged fraud and wrongful conduct have not been established by clear and convincing evidence.

(4) [t]he alleged fraud is not materially related to an issue in the arbitration hearing.

Specifically the trial court found that the allegations of fraud were supported primarily by the testimony of Susan Milcarek, an employee of defendant who was fired. Milcarek testified that defendant had fraudulently billed plaintiff for insurance premiums and construction costs, including renovations to the personal residence of the owner of the defendant corporation. The trial court found that Milcarek was not a credible witness and that plaintiff had failed to

establish by "clear and convincing evidence" its other allegations of fraud. The trial court then entered an order on 3 December 1996 denying plaintiff's motion to set aside the judgment and vacate the award. Plaintiff also appeals this order.

## I. Motion to Modify Award

[1] The plaintiff first argues that the trial court erred in denying its motion to modify the arbitration award. We disagree. The interpretation of the terms of an arbitration agreement are governed by contract principles and parties may specify by contract the rules under which arbitration will be conducted. *Futrelle v. Duke University*, 127 N.C. App. 244, 247-48, 488 S.E.2d 635, 638, *disc. review denied*, 347 N.C. 398, 494 S.E.2d 412 (1997); *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479, 103 L. Ed. 2d 488, 500 (1989). In this case, both parties entered into seven subcontracts, each containing a provision in which they agreed to submit "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Subcontract . . . in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association" (CIAR). Under CIAR Rule 42, the arbitrators are only required to "provide a concise, written breakdown of the award" when a request for an "explanation of the award" is made by one of the parties prior to the appointment of the arbitrators. CIAR Rule 44 provides for the modification of an award to "correct any clerical, typographical, technical or computational errors in the award."

We hold that these CIAR procedures are consistent with North Carolina law governing the enforcement of arbitration agreements. *See Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 235, 321 S.E.2d 872, 880 (1984) (enforcing Construction Industry Arbitration Rules adopted by parties pursuant to arbitration agreement). The applicable North Carolina statute governing modification of awards is N.C. Gen. Stat. § 1-567.14(a)(3) (1996), which confers upon the trial court the authority to review an arbitration award and "modify or correct" the award if it is "imperfect in a matter of form, not affecting the merits of the controversy." The trial court should utilize this power only in "special circumstances" as it is a disfavored procedure, not to be used "to reopen . . . the arbitration . . . with respect to matters which might have been brought forward in the previous proceeding." See *Futrelle*, 127 N.C. App. at 252, 488 S.E.2d at 641 (quoting *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 23, 331 S.E.2d 726, 730 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986)). Thus, "parties entering

into arbitration should exercise great care to delineate the precise claims and disputes to be resolved," *Futrelle*, 127 N.C. App. at 252, 488 S.E.2d at 641, including any specific requests that the award conform to a specific form. *See Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 188 (7th Cir. 1985) (remand to arbitration panel for clarification of the award is disfavored procedure), *cert. denied*, 475 U.S. 1010, 89 L. Ed. 2d 300 (1986); *see also Cyclone Roofing Co.*, 312 N.C. at 236, 321 S.E.2d at 880 (trial court did not err by denying motion to modify award on basis of error in manner in which award was calculated pursuant to N.C. G.S. § 1-567.14).

In this case neither party requested an explanation of the award prior to the appointment of the arbitrators and plaintiff did not allege in its motion to modify that modification of the award was necessary to "correct any clerical, typographical, technical or computational errors in the award" under CIAR Rule 44. For these reasons, we hold that the trial court did not abuse its discretion in refusing to modify or clarify the award on these grounds.

## II. Motion to Vacate Award

[2] Next plaintiff argues that the trial court should have vacated the arbitration award because it was procured by fraud and misconduct, or in the alternative, the trial judge should have set aside the judgment and confirmation pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b)(3) (1990) for the same reason. We disagree.

The Federal Arbitration Act (FAA) provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract." *Doctor's Assoc. v. Casarotto*, —— U.S. ——, ——, 134 L. Ed. 2d 902, 908 (1996) (quoting 9 U.S.C. § 2 (1947). The essential thrust of the FAA is to preclude state courts "from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" *Doctor's Assoc.*, —— U.S. at ——, 134 L. Ed. 2d at 909 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511, 41 L. Ed. 2d 270, 276 (1974). Thus, state courts may not invalidate arbitration agreements on grounds different from those upon which they invalidate contracts. *Doctor's Assoc.*, —— U.S. at ——, 134 L. Ed. 2d at 909; *Futrelle*, 127 N.C. App. at ——, 488 S.E.2d at 638.

To establish grounds for vacating an arbitration award in North Carolina, the moving party must prove not only the existence of

fraudulent conduct, but also that the "award was *procured* by corruption, fraud or other undue means." (Emphasis added). N.C. Gen. Stat. § 1-567.13 (1996) (establishing statutory grounds for vacating an award in North Carolina). Federal jurisdictions have interpreted this language, also found in the Federal Arbitration Act, 9 U.S.C. § 10 (Supp. 1997), as requiring a "nexus between the alleged fraud and the basis for the panel's decision," *see Forsythe Intern. S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir. 1990) (discussing requirements to vacate award on grounds of fraud), and we hold that it is appropriate to interpret N.C. Gen. Stat. § 1-567.13 as also requiring such a nexus. Federal courts have also imposed a similar requirement under Rule 60(b)(3) of the Federal Rules of Civil Procedure by requiring movants to prove that the fraud prevented them from presenting a meritorious defense. *See Green v. Foley*, 856 F.2d 660, 665 (4th Cir. 1988), *cert. denied*, 490 U.S. 1031, 104 L. Ed. 2d 204 (1989).

In this case, the trial court found that the evidence did not support plaintiff's allegations of fraud. After having the opportunity to observe Milcarek's testimony, the court found that she was not a credible witness. Moreover, even if the allegations regarding fraud were true, they were not materially related to an issue in the arbitration proceeding and no nexus was established between the fraud and the award because the arbitrators never received Milcarek's affidavit into evidence. Therefore the trial court's denials of the motion to vacate and Rule 60(b)(3) motion were proper on these grounds.

The trial court also found that the evidence did not support a conclusion that plaintiff fraudulently overbilled defendant for insurance premiums. The trial court ruled in its 26 July 1996 order that the award did not include "the actual amount of premiums due" because the arbitrators, in the award itself, left this amount "to be determined" at a later time. In its 3 December 1996 order, the trial court found there was "no evidence to support Ms. Milcarek's allegations that [defendant] ever 'padded' its insurance premium billing statement to [plaintiff]. . ." and again referred to its ruling in the 26 July 1996 order that the premiums due are to be determined at a later time. Finally, as to the allegations that plaintiff was fraudulently billed for renovations made to the personal residence of the owner of the defendant corporation, the trial court found in its 3 December 1996 order that these costs were "part of the agreed upon relocation costs" negotiated by the parties. We agree that defendant's billing of these costs does not constitute evidence of fraud. Accordingly, plaintiff has failed to meet its burden of proving that grounds exist to vacate the confirmation

award or to reverse the trial court's denial of the Rule 60(b)(3) motion.

We have reviewed the remaining arguments of plaintiff and find them to be without merit.

The trial court's orders are affirmed.

Affirmed.

Judges LEWIS and MARTIN, John C., concur.