EDWARD BOYNTON, Plaintiff-Appellee v. ESC MEDICAL SYSTEM, INC. f/k/a LUXAR CORPORATION, LUXAR CORPORATION AND VISTA MEDICAL SYSTEMS, INC., Defendants-Appellants

No. COA01-635

(Filed 6 August 2002)

**1. Appeal and Error— appealability—right to arbitrate**

The right to arbitrate is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore appealable even if all of the issues between the parties have not been resolved.

**2. Arbitration and Mediation— federal act—state act preempted**

The Federal Arbitration Act (FAA) preempts the North Carolina Uniform Arbitration Act when the contract containing an arbitration clause involves interstate commerce.

**3. Arbitration and Mediation— forum selection clause—interstate agreement**

An action for breach of a contract involving sales commissions was remanded for entry of an order granting defendant Luxar's motion to dismiss for failure to state a claim, with Luxar being free to seek arbitration in the State of Washington. The parties contemplated interstate commerce at the time their agreement was executed and the forum selection clause agreement in the arbitration provision was valid under the FAA.

**4. Arbitration and Mediation— mutual agreement—voluntary submission**

The trial court did not err by denying defendant ESC's motions to dismiss and to compel arbitration where ESC was a successor corporation which merely volunteered for arbitration. A party seeking to compel arbitration must prove the existence of a mutual agreement to arbitrate; voluntary submission to arbitration opposed by the other party does not constitute mutual agreement. However, the action as to ESC was stayed pending resolution of arbitrable claims in the State of Washington.

Appeal by defendants from order entered 7 February 2001 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 20 February 2002.

*Thomas B. Kobrin, for plaintiff-appellee.*

*Tuggle, Duggins & Meschan, P.A., by Scott C. Gayle, J. Reed Johnston, Jr., and Amanda L. Fields, for defendants-appellants.*

BRYANT, Judge.

Defendants LUXAR Corporation and ESC Medical System, Inc., appeal from the trial court's denial of their motions: 1) to compel arbitration; 2) for automatic stay; and 3) to dismiss.

Defendant LUXAR Corporation and plaintiff Edward Boynton executed a Sales Representative Agreement [Agreement] on 1 July 1997. LUXAR was a Washington corporation with its principal place

of business in Bothell, Washington. LUXAR manufactured and sold waveguide fibers, $CO_2$ lasers and other medical products. Boynton was a sales representative operating out of Greensboro, North Carolina.

The Agreement provided that Boynton would be LUXAR's exclusive independent sales representative in North Carolina and South Carolina. Boynton received commissions based on the net invoice price of all purchase orders placed with LUXAR. The Agreement contained an arbitration clause and a forum selection clause requiring arbitration in King County, Washington, if conflicts arose. According to Boynton, LUXAR was either acquired by ESC Medical Systems or ESC assumed LUXAR's debts in July 1997. Boynton was terminated by ESC in 1998.

On 2 October 2000, Boynton filed a complaint against LUXAR, ESC and Vista Medical Systems, Inc. Boynton alleged that Vista purchased medical equipment directly from LUXAR and ESC, then sold the equipment in Boynton's geographic territories, cutting Boynton out as the middle person. Boynton brought claims against LUXAR and ESC for breach of contract, against Vista for tortious interference with contract, and against LUXAR, ESC and Vista for fraud and unfair and deceptive trade practices.

On 15 November 2000, LUXAR sent Boynton and his attorney a letter demanding mandatory binding arbitration in Washington pursuant to the Agreement. The letter requested a response by 28 November 2000. Neither Boynton nor his attorney responded to LUXAR's request for arbitration. On 1 December 2000, LUXAR and ESC filed motions to compel arbitration, for automatic stay, and to dismiss. On 7 February 2001, the Guilford County Superior Court denied the motions. Defendants LUXAR and ESC appealed.

---

[1] Defendants assign as error the trial court's denial of their motions to compel arbitration, for automatic stay and to dismiss. We first determine whether defendants' appeal is from an interlocutory order, and, as such, should be dismissed. Generally, there is no right to appeal from an interlocutory order. *Turner v. Norfolk S. Corp.*, 137 N.C. App. 138, 141, 526 S.E.2d 666, 669 (2000). " 'An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy.' " *Id.* at 141, 526 S.E.2d at 669 (quoting *N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995)). An appeal from an inter-

locutory order may be taken under two circumstances: 1) the order is final as to some but not all the parties and there is no just reason to delay the appeal; or 2) the order deprives the appellant of a substantial right that would be lost unless immediately reviewed. *Id.; see* N.C.G.S. §§ 1-277(a), 7A-27(d) (2001).

In this case, defendants appeal from an interlocutory order because all issues between the parties have not been resolved. *See Raspet v. Buck,* 147 N.C. App. 133, 554 S.E.2d 676 (2001). However, "[t]he right to arbitrate a claim is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore immediately appealable." *Howard v. Oakwood Homes Corp.,* 134 N.C. App. 116, 118, 516 S.E.2d 879, 881 (1999), *review denied,* 350 N.C. 832, 539 S.E.2d 288, *cert. denied,* 528 U.S. 1155, 145 L. Ed. 2d 1072 (2000).

## I. The Arbitration Acts

[2] North Carolina public policy strongly favors arbitration. *Miller v. Two State Constr. Co.,* 118 N.C. App. 412, 455 S.E.2d 678 (1995). "The question of whether a dispute is subject to arbitration is an issue for judicial determination." *Raspet,* 147 N.C. App. at 136, 554 S.E.2d at 678. Our review of the trial court's determination as to whether a dispute is subject to arbitration is *de novo. Id.* Contract law determines whether a dispute is subject to arbitration. *Id.* at 135, 554 S.E.2d at 678.

Although not raised by the parties, we must first determine whether state or federal law, i.e., the Federal Arbitration Act [FAA] or North Carolina's Uniform Arbitration Act [UAA], applies to this action. The Federal Arbitration Act states:

> A written provision in any maritime transaction or a *contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1999) (emphasis added). Our UAA, however, states in pertinent part that "any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard

in another state is against public policy and is void and unenforceable." N.C.G.S. § 22B-3 (2001).

This Court has previously addressed the issue of which arbitration act applies. In *Eddings v. S. Orthopedic and Musculoskeletal Assocs., P.A.*, 147 N.C. App. 375, 383, 555 S.E.2d 649, 654 (2001) (pending appeal in our Supreme Court), this Court held that the FAA—versus North Carolina's UAA—governed an arbitration clause because the contract containing the arbitration clause involved interstate commerce. In *Eddings*, plaintiff-doctor signed an employment contract with Asheville Orthopedic Associates [AOA]. Because AOA was soon to merge with Southern Orthopedic and Musculoskeletal Associates, P.A. [SOMA], plaintiff was also required to sign two employment agreements with SOMA. The SOMA agreements contained arbitration clauses and one of the agreements contained a covenant not to compete. Plaintiff became disgruntled after approximately seventeen months of work, then obtained employment with a competing orthopedic practice in Asheville despite the covenant not to compete. SOMA filed a request for arbitration to try to settle its dispute with plaintiff. Plaintiff, however, filed an action alleging misrepresentation, fraud and unfair or deceptive trade practices, and requested a stay of the arbitration proceeding. Plaintiff also sought a declaratory judgment that the first SOMA agreement signed by plaintiff was unconscionable and void as against public policy. SOMA filed a motion to dismiss the complaint and to compel arbitration.

The trial court granted plaintiff's motion to stay arbitration, and denied SOMA's motion to compel arbitration and to dismiss plaintiff's complaint on the grounds that the employment agreements were procured by fraud, and the terms were unconscionable, vague and indefinite such that there was no meeting of the minds between the parties. *Id.* at 383, 555 S.E.2d at 654-55. Therefore, plaintiff was not required to submit to binding arbitration. On appeal, this Court reversed. Although neither party raised the issue, the *Eddings* Court held that the SOMA agreement was properly within the scope of the FAA, which preempts state law where the contract involves interstate commerce. Because plaintiff moved from Chattanooga, Tennessee, to take employment with AOA and SOMA, the transaction involved interstate commerce.[1] *Id.* at 383, 555 S.E.2d at 654. Based on

---

1. The dissent argued that the case should be remanded to the trial court to determine whether the agreement involved interstate commerce because there were not enough facts before the *Eddings* Court. The issue is pending before our Supreme Court.

*Eddings*, it is apparent that the contract in this case contains an arbitration clause which involves interstate commerce, and is therefore governed by the FAA.

Furthermore, the United States District Court for the Middle District of North Carolina has specifically addressed the issue of whether the FAA preempts our UAA's provision that renders a forum selection clause void. In *Newman ex rel. Wallace v. First Atlantic Resources Corp.*, 170 F. Supp. 2d 585 (M.D.N.C. 2001), plaintiff brought actions against four Florida residents—two corporations and their two presidents—alleging, *inter alia*, fraud, negligent misrepresentation, breach of fiduciary duty, unjust enrichment and unfair or deceptive trade practices. Defendants were precious metal brokers who entered into agreements with plaintiff, an investor residing in North Carolina. The commodities trading agreement with one of the defendants, Global Asset Management, Inc., contained arbitration, choice-of-law and forum selection provisions requiring the parties to arbitrate in Florida. The defendants made motions to compel arbitration and dismiss, or, in the alternative, to change venue to Florida. The district court dismissed plaintiff's claims against Global and its president. *Id.* at 594.

In reaching its decision, the district court considered *sua sponte* whether federal law (the FAA) preempted North Carolina state law (the UAA). Specifically, the district court considered for the first time whether the forum selection clause in the arbitration provision, which would be invalid under our State statutes, was valid and enforceable under the FAA. The district court concluded that because the forum selection clause would be void as against public policy under N.C.G.S. § 22B-3, it *might* conflict with Section 2 of the FAA. Section 2 states that an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[2] *Id.* at 592 (quoting 9 U.S.C. § 2).

---

2. We note that N.C.G.S. § 22B-3 of the UAA does not constitute a ground at law for the revocation of a contract such that the FAA would not apply. Our Supreme Court followed the United States Supreme Court's holding in *Doctor's Assocs. v. Cassarotto*, 517 U.S. 681, 134 L. Ed. 2d 902 (1996), in interpreting the FAA as follows:

The Federal Arbitration Act (FAA) provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract." The essential thrust of the FAA is to preclude state courts "from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.' " Thus, state courts may not invalidate arbitration agreements on grounds different from those upon which they invalidate contracts.

The district court also concluded that N.C.G.S. § 22B-3 may conflict with Section 4 of the FAA, which provides that parties to an arbitration agreement may be directed by the court to proceed with the arbitration in accordance with the terms of the agreement. *Id.* (citing 9 U.S.C. § 4). The Supremacy Clause of the United States Constitution provides that federal laws supercede state laws in conflict with federal laws. *Id.* at 592; *see* U.S. Const. art. VI, § 2. In dismissing plaintiff's claims against Global and its president, the district court stated,

Because the FAA preempts NCGS § 22B-3 and unfairness does not result from compliance with the forum-selection clause, arbitration of Plaintiff's claims against Global and [its president] must be held in . . . Florida. This court cannot compel arbitration in another district. Therefore, Plaintiff's claims against Global and [its president] will be dismissed without prejudice, and Plaintiff may pursue arbitration in Florida.

*Newman*, 170 F. Supp. 2d at 593 (citations omitted).

We find *Newman* instructive and conclude that the FAA preempts N.C.G.S. § 22B-3 and does not nullify the arbitration agreement or the forum selection clause.

## II. LUXAR Corporation

[3] In the case *sub judice*, the contract between LUXAR and Boynton contained the following provision:

Any controversy or dispute arising out of or relating to this Agreement shall be submitted to binding arbitration in King County, Washington, under the then existing Commercial Arbitration rules of the American Arbitration Association. Such decision may grant legal and equitable relief, including but not limited to injunction, and may grant any other form of relief appropriate. Judgment may be obtained on the arbitration award in any court having competent jurisdiction.

Boynton acknowledges the existence of this provision in his brief. We see nothing in the record indicating that the contract is invalid. The arbitration provision includes a forum selection clause naming King

*Trafalgar House Constr. v. MSL Enters.*, 128 N.C. App. 252, 257, 494 S.E.2d 613, 616-17 (1998) (citations omitted) (citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 684, 134 L. Ed. 2d 902, 908 (1996)). In other words, "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Casarotto*, 517 U.S. 681, 686-87, 134 L. Ed. 2d 902, 909 (1996).

County, Washington, as the appropriate jurisdiction in which to arbitrate.

Boynton argues that N.C.G.S. § 22B-3 renders the forum selection provision void as against public policy. We disagree. The Agreement provided that Boynton would be LUXAR's exclusive independent sales representative in North Carolina and South Carolina. Furthermore, Boynton is a resident of North Carolina and LUXAR is a resident of Washington. " 'The significant question . . . [in determining whether a contract evidences a transaction involving commerce], is not whether, in carrying out the terms of the contract, the parties *did* cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they *contemplated* substantial interstate activity.' " *In re Cohoon*, 60 N.C. App. 226, 229, 298 S.E.2d 729, 731 (1983) (alteration in original) (quoting *Burke County Public Schools Bd. of Educ. v. Shaver P'ship*, 303 N.C. 408, 279 S.E.2d 816 (1981)) (holding that evidence supported finding that interstate commerce had been contemplated such that FAA applied). The evidence is undisputed that Boynton's exclusive territory covered two states,[3] and that the parties resided in different states. Therefore, we conclude that the parties contemplated interstate commerce at the time the Agreement was executed and that the forum selection clause in the arbitration provision was valid under the FAA. Accordingly, we hold that the trial court erred in denying LUXAR's motion to dismiss for failure to state a claim. We remand to the trial court for entry of an order granting LUXAR's motion to dismiss Boynton's complaint. LUXAR may seek arbitration in the State of Washington pursuant to the forum selection clause.

### III. ESC Medical Systems, Inc.

[4] "The party seeking to compel arbitration must prove the existence of a mutual agreement to arbitrate." *Thompson v. Norfolk S. Ry.*, 140 N.C. App. 115, 120, 535 S.E.2d 397, 400 (2000). It is unclear from the record that ESC was a party to the Agreement between LUXAR and Boynton. Moreover, the legal coordinator for ESC admitted that ESC was not a party to the Agreement. She also denied all liability to Boynton, for the debts or obligations of LUXAR. Nevertheless, ESC sought to voluntarily submit itself to binding arbitration in

---

3. Because Boynton demanded payment of all commissions from sales within his exclusive territories, he implicitly acknowledges that the parties contemplated interstate commerce at the time the Agreement was executed. Furthermore, the fact that Boynton seeks damages for breach of contract indicates that the validity of the contract is not in dispute.

**BOYNTON v. ESC MED. SYS., INC.**

[152 N.C. App. 103 (2002)]

Washington for any claims arising out of the Agreement between LUXAR and Boynton. We conclude that ESC failed to prove the existence of a *mutual* agreement to arbitrate; merely voluntarily agreeing to arbitrate when Boynton refused to do so does not constitute a mutual agreement. We therefore conclude that the motion to arbitrate as to ESC should be denied. Accordingly, the trial court did not err in denying the motions to compel arbitration and to dismiss.

However, we conclude that denying the motion for automatic stay was in error. ESC may be able to arbitrate its claims in an arbitration proceeding involving LUXAR and plaintiff. If ESC is not entitled to arbitration, plaintiff may nevertheless pursue its claims in North Carolina, absent additional jurisdictional challenges. Meanwhile, the action as to ESC should be stayed pending resolution of the arbitrable claims in the State of Washington. Therefore, we reverse the lower court's denial of the automatic stay and remand to the trial court for entry of an order granting defendant ESC's motion to stay the present action pending completion of the arbitration, if any. Thereafter, a determination can then be made by the trial court as to what, if any, claims remain against ESC.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

As to defendant LUXAR, the trial court's order denying LUXAR's motion to dismiss is REVERSED and REMANDED with instructions to enter an order dismissing Boynton's complaint. LUXAR is free to pursue arbitration in the State of Washington.

As to defendant ESC, the trial court's order denying ESC's motions to compel arbitration and to dismiss is AFFIRMED. The trial court's order denying ESC's motion for automatic stay is REVERSED and REMANDED to the trial court with instructions to stay this action to allow the parties to seek arbitration in the State of Washington.

Judges WALKER and HUNTER concur.