IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-354

Filed: 1 December 2015

Forsyth County, No. 13 CVS 6669

T.M.C.S., INC. d/b/a TM CONSTRUCTION, INC., Plaintiff,

v.

MARCO CONTRACTORS, INC., Defendant.

Appeal by defendant from order entered 1 October 2014 by Judge Richard L. Doughton in Forsyth County Superior Court. Heard in the Court of Appeals 23 September 2015.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Clint S. Morse, for plaintiff-appellee.*
>
> *Bell, Davis & Pitt, P.A., by D. Anderson Carmen, for defendant-appellant.*

CALABRIA, Judge.

Defendant Marco Contractors, Inc. ("Marco") appeals from an order denying its motion to compel arbitration. For the reasons that follow, we affirm.

## **Background**

This case arises from a construction contract for the renovation of a Wal-Mart, Inc. ("Wal-Mart") retail store. Marco, a construction management company based in Pennsylvania, regularly performs construction work for Wal-Mart. Plaintiff TM Construction, Inc. ("TM") is a licensed North Carolina general contractor. On 18 April 2013, John Yenges ("Yenges") of Marco contacted TM's president, Thomas Malone

("Malone"), regarding construction at a Wal-Mart store in Winston-Salem, North Carolina. Since it was an urgent job, Malone and Yenges met at the jobsite later that day to discuss the scope and estimated cost of the work. TM promptly provided Yenges with two written quotations—$35,250.00 for carpentry work and $44,388.00 for painting ("quotations")—both of which specified that Marco would be primarily responsible for providing the necessary materials. According to Malone, after Yenges made slight revisions to the carpentry work, the two reached an agreement that TM "would provide the services and limited specified materials based upon the terms of the quotations" provided to Marco. Subsequently, Yenges arranged for delivery of the necessary carpentry materials and painting supplies to the Wal-Mart jobsite.

On or about 23 April 2013, Yenges approached Malone with a written contract ("the contract")[1] to be executed between Marco and TM. While reviewing the contract, Malone noticed that the total amount, $79,638.00, matched the total recited in the quotations for labor and equipment, but the contract obligated TM to provide all necessary materials for the construction project. After Malone pointed out this discrepancy in the scope of work, Yenges agreed that some of the new terms were incorrect and indicated that the contract was Marco's standard form agreement. Significantly, the contract contained an arbitration provision, which stated that any

---

[1] For the sake of convenience, we refer to the document that Yenges delivered to Malone as "the contract." However, as discussed below, TM claims it is not bound by the terms of this document and the trial court did not decide whether a valid and enforceable agreement existed between the parties.

disputes would be arbitrated in Pennsylvania at the option of Marco. The arbitration provision also included a 30-day time limit on submitting a demand for arbitration. Both men edited the contract provisions to match the quotations, but Yenges eventually concluded that such efforts were unnecessary and indicated that he only needed Malone to sign a draft for Marco's files. According to Malone, Yenges represented that he would change the contract's terms to mirror those of the quotations. Apparently reassured, Malone signed a signature page of the contract—which listed TM's proposed subcontractors for the job—under the impression that the terms would not be enforceable until Yenges made the appropriate changes. TM continued the project work with the impression that it was performing under the terms of the quotations.

About six weeks later, in a letter dated 3 June 2013, James Good ("Good") of Marco demanded that TM cease work on the project, claiming that Marco had no signed construction contract from TM on file. After Malone explained that Yenges had not finished the  previously agreed-upon revisions, Good asked Malone to send Marco a signed copy of the contract that was to be amended. Since Good indicated the quotations' terms would be incorporated into the agreement, Malone signed and initialed the contract and back-dated it to 24 April 2013, the approximate date Yenges and Malone identified and discussed the discrepancies. Malone then faxed the document to Good, who signed for Marco on 10 June 2013.

Subsequently, Marco employee Mary Crawford asked TM to provide a quotation for additional work on the Wal-Mart's nursery area, and Malone complied with the request. In a separate communication, Good called Malone and asserted that Marco would hold TM to the original terms of the contract, which did not conform to the quotations. Although Malone responded that TM would not work under those terms, Marco accepted TM's proposal for the nursery job as additional work that was not included in the original quotations. TM completed the original project as well as the additional nursery work, and last furnished labor or materials on 14 August 2013.

Both during and after TM's performance, Marco issued several "change orders" which reflected additions to and deductions from the contract price. Most of the change orders reduced the contract price, that is, the amount Marco would pay for TM's services. For example, Marco issued three change orders reducing the scope of TM's work and two change orders reflecting deductions for paint and other materials Marco had provided. In July and August 2013, TM sent Marco three invoices totaling $101,780.00, but Marco agreed to pay only $38,833.94, the "revised contract total" as determined by the change orders.

On 4 September 2013, TM filed a claim of lien on the real property in Forsyth County and served Marco with a claim of lien on funds. TM then filed a complaint in Forsyth County Superior Court seeking judgment on its claim of lien in the amount of $101,780.00. TM's complaint also alleged that the quotations represented the

parties' contract and that Marco was in breach of it. Marco filed an answer in December 2013. After court-ordered mediation proceedings failed to produce a settlement, TM served Marco with discovery requests on 8 January 2014. The parties then engaged in a protracted battle over discovery issues, which resulted in one order granting TM's motion to compel discovery and another order granting sanctions against Marco.

When TM filed a second motion for sanctions, Marco responded by filing a motion for summary judgment. As an alternative form of relief, Marco also filed a motion to compel arbitration proceedings in Pennsylvania. After conducting a hearing in Forsyth County, the trial court entered an October 2014 order denying both of Marco's motions. The trial court denied Marco's summary judgment motion because "genuine issues as to material facts" remained. As for the motion to compel arbitration, the trial court expressly declined "to decide the issue of whether the . . . [c]ontract (and its arbitration provision) [was] valid and enforceable." The trial court concluded that even if a valid and enforceable agreement existed, Marco failed to demand arbitration within the time limit set forth in the contract. In addition, as "an independent reason" to deny the motion to compel, the trial court concluded that TM had been prejudiced by Marco's "failure to timely seek arbitration." Finally, the trial court ordered Marco to produce certain internal e-mails or provide affidavits that the

relevant messages could not be recovered. Marco appeals the denial of its motion to compel arbitration.

## Analysis

### A. Grounds For Appellate Review

As an initial matter, we note that an order denying a motion to compel arbitration, although interlocutory, is immediately appealable. *Moose v. Versailles Condo. Ass'n*, 171 N.C. App. 377, 381, 614 S.E.2d 418, 422 (2005). This is so because " 'the right to arbitrate a claim is a substantial right which may be lost if review is delayed[.] ' " *Boynton v. ESC Med. Sys., Inc.*, 152 N.C. App. 103, 106, 566 S.E.2d 730, 732 (2002) (citation omitted).

### B. Choice Of Law

While both Marco and TM acknowledge the choice of law issue lurking in the background of this case, neither party makes a satisfactory attempt to resolve it. Marco argues in a footnote that N.C. Gen. Stat. § 22B-2 should not be applied to invalidate the choice of law provision located in Article 19 of the contract. Article 19, entitled "CONTRACT INTERPRETATION," provides that the parties' agreement "shall be governed by the Laws of the Commonwealth of Pennsylvania[.]"

N.C. Gen. Stat. § 22B-2 (2013) states that a

> provision in any contract, subcontract, or purchase order for the improvement of real property in this State, or the providing of materials therefor, is void and against public policy if it makes the contract, subcontract, or purchase

order subject to the laws of another state, or provides that the exclusive forum for any litigation, arbitration, or other dispute resolution process is located in another state.

*Id.* Pursuant to section 22B-2, choice of law provisions are voided "when the subject matter of the contract involves improvement to realty located in North Carolina." *Price & Price Mech. of N.C., Inc. v. Miken Corp.*, 191 N.C. App. 177, 179, 661 S.E.2d 775, 777 (2008).

Since the contract involved providing labor and materials for the improvement of a Wal-Mart retail store (real property) located in North Carolina, it appears that section 22B-2 should apply. Marco insists, however, that Pennsylvania law applies because section 22B-2 is preempted by the Federal Arbitration Act ("FAA"), thus rendering the contract's choice of law provision enforceable. As recognized by this Court, the FAA applies when a contract calling for arbitration "evidences a transaction involving interstate commerce." *Hobbs Staffing Servs., Inc. v. Lumbermens Mut. Cas. Co.*, 168 N.C. App. 223, 226, 606 S.E.2d 708, 711 (2005). " 'Whether a contract evidence[s] a transaction involving commerce within the meaning of the [FAA] is a question of fact' for the trial court[,]" *King v. Bryant*, 225 N.C. App. 340, 344, 737 S.E.2d 802, 806 (2013) (citation omitted), and this Court "cannot make that determination in the first instance on appeal[.]" *Cornelius v. Lipscomb*, 224 N.C. App. 14, 18, 734 S.E.2d 870, 872 (2012). More importantly, neither the FAA nor its potential application to this case was ever mentioned at the

hearing on Marco's motion to compel arbitration, and the trial court refused to decide whether the contract was valid and enforceable. As such, the issue of whether the FAA preempts section 22B-2 is not properly before us[2].

Even if Marco had argued below that the FAA preempts North Carolina law, its assertion that Pennsylvania law categorically applies here is incorrect. "The [FAA] was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate, and place such agreements upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 103 L.Ed.2d 488, 497 (1989) (internal citations and quotation marks omitted). As the United States Supreme Court has recognized, "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Id.* at 477, 103 L.Ed. 2d at 499. Furthermore, in a case where the validity and enforceability of an arbitration provision is disputed, general principles of state contract law must be applied to determine these threshold issues. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 131 L. Ed. 2d 985, 993 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter[,] courts generally . . . should apply ordinary state-law

---

[2] Marco makes the same preemption argument as to N.C. Gen. Stat. § 22B-3, which voids forum selection clauses (requiring the prosecution or arbitration of an action in another state) in contracts entered into in North Carolina. According to Marco, any contention that the contract's forum selection clause, which requires disputes to be arbitrated in Pennsylvania, is unenforceable pursuant to section 22B-3 is meritless. TM makes no such contention, but in any event, we reject Marco's argument for the same reasons that we reject its section 22B-2 preemption argument.

principles that govern the formation of contracts."); *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 685, 134 L. Ed. 2d 902, 907 (1996) (emphasizing that state law, "whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally") (citation omitted); *Park v. Merrill Lynch*, 159 N.C. App. 120, 122, 582 S.E.2d 375, 378 (2003) (citing *Kaplan* for the proposition that "state law generally governs issues concerning the formation, revocability, and enforcement of arbitration agreements").

The trial court denied Marco's summary judgment motion since genuine issues as to material facts regarding the renovation contract's enforceability remain. Therefore, we cannot and need not decide the choice of law issue because such a determination is not necessary to resolve this appeal. Moreover, the relevant laws of Pennsylvania and North Carolina are substantially the same, and they do not conflict with the FAA. *Park*, 159 N.C. App. at 122, 582 S.E.2d at 378 ("The FAA only preempts state rules of contract formation which single out arbitration clauses and unreasonably burden the ability to form arbitration agreements . . . with conditions on (their) formation and execution . . . which are not part of the generally applicable contract law." (internal citations and quotation marks omitted)); *Gaffer Ins. Co. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1114 (Pa. Super. Ct. 2007) ("[R]egardless of whether the contract is governed by federal or state arbitration law, we apply general principles of Pennsylvania contract law to interpret the parties' agreement."). We

will apply the general contract rules of both states, for the result is the same either way.

## C. Sufficiency Of The Trial Court's Order

Marco also argues that the trial court's order lacks sufficient findings of fact. According to Marco, "[b]ecause the trial court here failed and in fact refused to decide the validity and enforceability of the [c]ontract and its arbitration provision, its denial of Marco's motion to compel arbitration must be reversed and remanded on this ground alone." Based on the circumstances of this case, we disagree.

When, as here, one "party claims a dispute is covered by an agreement to arbitrate and the other party denies the existence of an arbitration agreement, the trial court must determine whether an arbitration agreement actually exists." *Moose*, 171 N.C. App. at 381, 614 S.E.2d at 422 (citation and quotation marks omitted); N.C. Gen. Stat. § 1-569.6(b) (2013). "This judicial determination involves the two-step process of ascertaining: '(1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement.'" *Moose*, 171 N.C. App. at 381, 614 S.E.2d at 422 (internal quotation marks omitted) (quoting *Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001)); *Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. Ct. 2012) ("[W]e employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second

determination is whether the dispute is within the scope of the agreement." (citation omitted)).

Our decisions in this context have consistently held that "an order denying a motion to compel arbitration must include findings of fact" regarding the validity and scope of an arbitration agreement. *Griessel v. Temas Eye Ctr., P.C.*, 199 N.C. App. 314, 317, 681 S.E.2d 446, 448 (2009); *see, e.g.*, *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678 (adopting two-part test as to whether a dispute is subject to arbitration). Whenever a trial court has failed to include these findings in its order, this Court has routinely reversed and remanded for entry of an order that contains the necessary findings. *See, e.g.*, *Pineville Forest Homeowners Ass'n v. Portrait Homes Constr. Co.*, 175 N.C. App. 380, 387, 623 S.E.2d 620, 625 (2006) (reversing order denying motion to compel arbitration and remanding for "a new order containing findings which sustain its determination regarding the validity and applicability of the arbitration provisions"); *Cornelius*, 224 N.C. App. at 16–17, 734 S.E.2d at 872 (reversing and remanding because the "order provides no findings and no explanation for the basis of the court's decision to deny the motion to compel arbitration"); *Griessel*, 199 N.C. App. at 317, 681 S.E.2d at 448 (because "the trial court made no finding of fact as to the existence of a valid agreement to arbitrate[,] . . . we must reverse the trial court's order and remand for entry of findings of fact"). Apparently, these cases were reversed and remanded because the trial court orders at issue did not the meet basic

requirements of appellate review. Specifically, nothing in the orders revealed the basis of the trial court's ruling. And while the validity and scope of a purported agreement to arbitrate seem to be preliminary issues before the trial court in the course of ruling on a motion to compel arbitration, we see no talismanic quality in the resolution of these issues in every case; the appellate court simply must be able to determine whether the lower court properly ruled on the motion.

Indeed, common threads run throughout our mandates reversing and remanding for failure to make the requisite findings regarding the validity and applicability of an arbitration agreement: in each case, the trial court's order was devoid of *any* meaningful findings and its rationale for denying the motion to compel arbitration could not be determined on appeal. For example, in *Cornelius*, the case upon which Marco relies, the trial court's order denying the defendant's motion to compel arbitration stated only that the court had considered all pleadings, materials, and briefs "submitted by the parties with regard to the motions" along with "the materials and testimony submitted at the hearing on the motions . . . [and the] arguments of counsel with regard to the motions." 224 N.C. App. at 17, 734 S.E.2d at 871 (2012). Because "the order provide[d] no findings and no explanation for the basis of the [trial] court's decision to deny the motion to compel arbitration[,]" the *Cornelius* Court reversed and remanded so the requisite findings could be made. *Id.* at 17, 734 S.E.2d at 872. Similarly, in *U.S. Trust Co. v. Stanford Grp. Co.*, the trial

court's order did "not set out the rationale underlying [its] decision to deny [the] defendants' motion" to compel arbitration. 199 N.C. App. 287, 291, 681 S.E.2d 512, 515 (2009) (per curiam). While the plaintiff had presented numerous possible bases in fact and law that could support the denial below, this Court remanded for additional findings because there was "no way of knowing which, if any, of those arguments were persuasive to the trial court, or whether it relied upon some other basis that might or might not be sustainable on appeal." *Id.* at 292, 681 S.E.2d at 515; *see also Ellis–Don Constr., Inc. v. HNTB Corp.*, 169 N.C. App. 630, 635, 610 S.E.2d 293, 296 (2005) ("While denial of [the] defendant's motion might have resulted from: (1) a lack of privity between the parties; (2) a lack of a binding arbitration agreement; (3) this specific dispute does not fall within the scope of any arbitration agreement; or, (4) any other reason, we are unable to determine the basis for the trial court's judgment."); *Barnhouse v. Am. Express Fin. Advisors, Inc.*, 151 N.C. App. 507, 509, 566 S.E.2d 130, 132 (2002) ("In the instant case, there is no indication that the trial court made any determination regarding the existence of an arbitration agreement between the parties before denying [the] defendants' motion to stay proceedings. The order denying [the] defendants' motion to stay proceedings does not state upon what basis the court made its decision, and as such, this Court cannot properly review whether or not the court correctly denied [the] defendants' motion."); *Pineville Forest*, 175 N.C. App. at 387, 623 S.E.2d at 625 (since the order at issue was

indistinguishable from that in *Ellis-Don*, the previous holdings in *Ellis-Don* and *Barnhouse* required that the order be reversed and remanded); *Steffes v. DeLapp*, 177 N.C. App. 802, 805, 629 S.E.2d 892, 895 (2006) ("As we cannot determine the reason for the denial, we cannot conduct a meaningful review of the trial court's conclusions of law and must reverse and remand the order for further findings."). The essence of all these opinions is that "[w]ithout findings, the appellate court cannot conduct a meaningful review of the conclusions of law and 'test the correctness of [the lower court's] judgment.'" *Ellis-Don*, 169 N.C. App. at 635, 610 S.E.2d at 297 (citation omitted).

In the instant case, the trial court explicitly stated its grounds for denying Marco's motion to compel arbitration. Based on nineteen detailed findings, the court concluded that "[e]ven if the [c]ontract was valid and enforceable," (1) TM was prejudiced by Marco's delay in seeking arbitration such that Marco waived whatever right it may have had to arbitrate, and (2) Marco "failed to timely serve an arbitration demand" under the terms of the contract. While the court declined to decide whether the contract and the arbitration provision were valid and enforceable, this approach was eminently reasonable given the case's procedural posture. In its motion for summary judgment, Marco asked the trial court to conclude that the contract was enforceable and rule in its favor based on TM's purported violation of the agreement's terms, a request the court denied since genuine issues of material fact remained

- 14 -

unresolved. Given the standstill that the parties' discovery battle had produced, there was an insufficient record to determine the contract's enforceability. Even so, for the purpose of ruling on Marco's motion to compel arbitration, the trial court in essence assumed that a valid arbitration agreement existed between the parties. Consequently, the trial court's conclusions would have been the same had it actually decided the validity and enforceability issues. Because the trial court stated the specific bases for its ruling, the order denying Marco's motion to compel arbitration is materially distinguishable from those entered in the cases cited above. Moreover, it would be an exercise in futility to reverse and remand for further findings. Under these circumstances, the trial court was justified in putting "the cart before the horse." Accordingly, we proceed to determine whether Marco's motion to compel arbitration was properly denied. *See Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 610 A.2d 499, 500–02 (Pa. Super. Ct. 1992) (looking past the trial court's refusal to decide the applicability and enforceability of an arbitration clause and affirming an order denying a party's motion to compel arbitration, stating that the "trial court was correct in holding that the applicability and/or enforceability of the arbitration clause is *irrelevant* since [the party] had waived any right it may have had to such relief in this case") (emphasis added)).

### D. Untimely Demand; Contractual Interpretation

Marco next argues the trial court erred in concluding that Marco surrendered its right to arbitrate the dispute by serving an untimely demand for arbitration on TM. We disagree.

Because "[t]he law of contracts governs the issue of whether there exists an agreement to arbitrate, . . . the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes." *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271–72, 423 S.E.2d 791, 794 (1992) (internal citations omitted). "The trial court's determination of whether a dispute is subject to arbitration . . . is a conclusion of law reviewable *de novo*." *Moose*, 171 N.C. App. at 382, 614 S.E.2d at 422 (citation omitted).

Since the right to arbitration arises from contract, it may be waived in certain instances. *Cyclone Roofing Co., Inc. v. David M. LaFave Co., Inc.*, 312 N.C. 224, 321 S.E.2d 872 (1984). Our Supreme Court has held that a party impliedly *waives* its contractual right to arbitrate a dispute "if by its delay or by actions it takes which are inconsistent with arbitration, another party to the contract [would be] prejudiced by [an] order compelling arbitration." *Id.* at 229, 321 S.E.2d at 876. Some contracts, however, set a time limit for submitting a demand for arbitration, and failure to comply with such terms results in a party's *forfeiture* of its right to arbitrate. To that end, North Carolina law recognizes a distinction between an untimely demand for arbitration and a waiver of the right to arbitration. *Adams v. Nelsen*, 313 N.C. 442,

448, 329 S.E.2d 322, 326 (1985) ("In this case, the contract contained . . . a time limitation within which a party to the contract could make a demand for arbitration. Therefore, the question of whether defendant 'impliedly waived' his right to demand arbitration is not an issue in this case."). "Where the parties have agreed that a demand for arbitration must be made within a certain time, that demand is a condition precedent that must be performed before the contractual duty to submit the dispute to arbitration arises." 1 Martin Domke, Gabriel Wilner & Larry E. Edmonson, *Domke on Commercial Arbitration* § 19:1 (3d ed. 2015).

Whenever a party seeks to arbitrate a dispute outside the time specified by the arbitration agreement, it has made an untimely request and released—or forfeited— its contractual right to demand arbitration. *See Adams*, 313 N.C. at 448, 329 S.E.2d at 326; *Dickens v. Pa. Tpk. Comm'n*, 40 A.2d 421, 423 (Pa. 1945) ("There being in the contract between the parties an arbitration agreement, its terms must be complied with as a prerequisite to the right to arbitrate. We hold that the provision in the contract that reference of question [sic] in dispute 'must be made' within 30 days 'after final quantities have been determined' is an express 'condition precedent' to such arbitration." ); *see also Adams Cnty. Asphalt Co. Inc. v. Pennsy Supply Inc.*, 2 Pa. D. & C.4th 331, 335–36 (Com. Pl.) *aff'd sub nom. Adams Cnty. v. Pennsy*, 570 A.2d 1084 (Pa. Super. Ct. 1989) ("[W]e can conceive of contract provisions which, by their clarity, would set out provisions that would show clearly that the contracting parties agreed

that conditions precedent had to be met before arbitration would be appropriate and, similarly, would specify, without question, that if certain conditions were not met, arbitration was not available."). Here, the trial court ruled that even if a valid arbitration agreement existed, Marco's demand to arbitrate the dispute was untimely and therefore barred under the terms of the arbitration provision.

The arbitration provision at issue provides, in pertinent part, as follows:

> All claims or disputes between the Subcontractor and the Contractor arising out of or related to this Subcontract or the breach thereof or either party's performance of their obligations under this Subcontract shall be decided by arbitration, *at the option of the Contractor*, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") currently in effect. Notice of the demand for arbitration shall be filed in writing with the *other party to this agreement* and, upon acceptance by the Contractor, *if required*, filed with the AAA. Such notice must be made within 30 days after the claim or dispute has arisen or within 30 days after the Subcontractor's work under this Subcontract has been completed, whichever is later. Arbitration under this paragraph, if involved, shall be held in Allegheny County, Pennsylvania, and shall be the Subcontractor's exclusive remedy, to the exclusion of all other remedies, including the filing of a mechanic's lien or construction lien, for any dispute within the scope of this paragraph.

(emphasis added). Marco argues the provision "requires the party asserting a claim arising or related to the [c]ontract to submit to the other party a written notice of demand for arbitration, rather than the converse." According to Marco, "[f]or a claim by [TM], such notice would activate Marco's 'option' to 'accept' the demand, or to

instead allow the dispute to proceed in some other forum other than arbitration." As Marco's reasoning goes, since TM never demanded arbitration, "Marco was never 'on the clock' to accept the demand or otherwise move to compel arbitration when it filed a motion to that end in September 2014."

General principles of state contract law govern the interpretation of an arbitration agreement's terms. *Trafalgar House Constr., Inc. v. MSL Enters., Inc.*, 128 N.C. App. 252, 256, 494 S.E.2d 613, 616 (1998); *Gaffer Ins. Co.*, 936 A.2d at 1113. In construing the terms of a contract, courts "must give ordinary words their ordinary meanings." *Internet E., Inc. v. Duro Commc'ns, Inc.*, 146 N.C. App. 401, 405, 553 S.E.2d 84, 87 (2001) (citation omitted). When the language of an arbitration clause is "clear and unambiguous," we may apply the plain meaning rule to interpret its terms. *See Ragan v. Wheat First Sec., Inc.*, 138 N.C. App. 453, 459, 531 S.E.2d 874, 878 (2000) (applying the plain meaning rule to interpret the scope of an arbitration clause).

> "Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms." . . . If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract."

*State v. Philip Morris USA, Inc.*, 193 N.C. App. 1, 12-13, 666 S.E.2d 783, 791 (2008) (citations omitted omitted); *see also Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001) (" '[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone.' In construing a contract, we must determine the intent of the parties and give effect to all of the provisions therein." (citation omitted)).

The prefatory phrase found in the arbitration provision plainly states that all claims or disputes between the parties "shall" be arbitrated, "*at the option*" of Marco, "in accordance with the [applicable rules] of the American Arbitration Association ("AAA")." By including this language in the contract, Marco stacked the deck in its favor by reserving a unilateral right to decide whether any potential dispute would be arbitrated. But the demand obligations imparted by the notice language in the arbitration provision are clearly bilateral in nature. According to the arbitration provision's terms, if either Marco or TM wished to arbitrate a dispute, written "[n]otice of the demand for arbitration" had to be filed "with the *other party* to" the agreement "within 30 days after the claim or dispute [arose] or within 30 days after" TM completed its work under the contract, whichever was later. Despite this clear language, Marco insists that it never had cause to demand arbitration because such a demand "should *already* have been [made] by" TM. Rather conveniently, however, Marco fails to explain what portion of the provision gave it the right to demand arbitration nearly a year after TM filed its claim of lien. Furthermore, it is illogical

to believe that TM would demand arbitration when it took the position that no valid agreement to arbitrate existed between the parties.

Marco also has nothing to say about the option language included in the provision, which requires notice of an arbitration demand to be filed with the AAA "upon acceptance by [Marco], *if required*." Pursuant to the plain meaning of this language, if TM demanded arbitration, Marco could either accept the demand or reject it and proceed to utilize the litigation machinery. As TM points out, notice would only be filed with the AAA upon Marco's acceptance of an arbitration demand. Yet if Marco exercised its option to demand arbitration, notice would promptly be sent to the AAA. In other words, Marco, as the initiating party, would not be "required" to accept a demand made by itself. Again, Marco was in the driver's seat, but if it wished to arbitrate the dispute, Marco had the responsibility to make a timely demand to that effect in light of TM's refusal to do so.

Finally, Marco drafted the contract and arbitration provision contained within it. "Pursuant to well settled contract law principles, the language of the arbitration clause should be strictly construed against the drafter of the clause." *Harbour Point Homeowners' Ass'n, Inc. ex rel. its Bd. of Dirs. v. DJF Enters., Inc.*, 201 N.C. App. 720, 725, 688 S.E.2d 47, 51 (2010). Based on the language drafted by Marco, TM and Marco were both subject to the 30-day time limit placed on arbitration demands related to disputes under the contract. Since TM filed a claim of lien on the real

property and served a claim of lien on funds on 4 September 2013, a dispute had arisen from the contract and Marco was obligated to file a demand for arbitration by early October 2013. Unfortunately for Marco, its motion to compel arbitration filed on 9 September 2014 was nearly a year too late. As a result, Marco forfeited its purported right to arbitrate the dispute with TM, and the trial court properly denied Marco's motion to compel arbitration.

## Conclusion

Given our holding that Marco forfeited its purported right to demand arbitration, we need not address Marco's additional argument that the trial court erred by ruling that its delay in demanding arbitration prejudiced TM and constituted a waiver of its right to arbitrate. Because the trial court's order contained detailed findings which support its conclusions, we are not required to remand this case for a determination of whether a valid and enforceable arbitration agreement existed between the parties. Whether Pennsylvania or North Carolina contract law is applied, under the plain language of the allegedly enforceable agreement, Marco made an untimely demand for arbitration. Accordingly, we affirm the trial court's order denying Marco's motion to compel arbitration.

AFFIRMED.

Judges STROUD and INMAN concur.