PAGE C. KEEL, JR., Plaintiff v. PRIVATE BUSINESS, INC., Defendant

No. COA03-703

(Filed 20 April 2004)

**1. Appeal and Error— appealability—order denying arbitration—substantial right affected**

An order denying arbitration is interlocutory but affects a substantial right and is immediately appealable.

**2. Arbitration and Mediation— agreement to arbitrate non-compete agreement—assets of company purchased—arbitration stayed**

The trial court had jurisdiction pursuant to the Federal Arbitration Act to stay the pending arbitration of a non-compete agreement signed by plaintiff with a company whose assets were subsequently acquired by defendant. The question of whether defendant was the valid successor or assignee of the first company goes directly to the issue of whether the parties agreed to arbitrate their claims.

**3. Employer and Employee— non-compete agreement—assignment**

The trial court's conclusion that a company (Cam Commerce) did not assign its rights under a non-compete agreement to

defendant was supported by the findings and the evidence. A finding of fact may be supported by competent evidence even if there is evidence to the contrary.

### 4. Injunctions— preliminary—success on merits—irreparable injury

The trial court did not err by granting a preliminary injunction against arbitration and the enforcement of a non-compete agreement where plaintiff showed a likelihood of success on the merits and irreparable harm.

Appeal by defendant from order entered 11 February 2003 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 3 March 2004.

*Murchison, Taylor & Gibson, P.L.L.C., by Andrew K. McVey and James W. Latshaw, for plaintiff-appellee.*

*Vaiden P. Kendrick and Harwell, Howard, Hyne, Gabbert & Manner, P.C., by Leilani Boulware, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals from an interlocutory order entered by the trial court on 11 February 2003 staying an arbitration action previously commenced by the defendant and enjoining the defendant from proceeding with arbitration and engaging in anti-competitive practices.

The plaintiff, Page Keel, filed a complaint on 16 September 2002, seeking declaratory relief, injunctive relief, and damages arising from a dispute over a non-compete agreement entered into between plaintiff and a third party, Cam Data Systems, Inc. ("Cam Data"), now known as Cam Commerce Solutions, Inc. ("Cam Commerce"). Cam Commerce later entered into an asset purchase agreement with defendant, pursuant to which defendant claims it was assigned Cam Commerce's rights in the non-compete agreement. Plaintiff sought a declaration that the non-compete agreement is unenforceable, as well as preliminary and permanent injunctive relief enjoining defendant from proceeding with an arbitration action instituted, pursuant to the agreement, before the American Arbitration Association on or about 19 August 2001 in Fresno, California.

Defendant filed an affidavit from its chief executive officer, Thomas Lynn Black, in opposition to plaintiff's request for injunctive

relief and the matter was heard in the superior court on 26 September 2002. Prior to an order being entered, however, the defendant removed the action to the United States District Court for the Eastern District of North Carolina and filed its answer in that court on 8 November 2002. On 7 January 2003, the United States District Court for the Eastern District of North Carolina remanded the action to the New Hanover County Superior Court. The superior court then entered an order on 11 February 2003, granting plaintiff's request to stay defendant's pending arbitration action in Fresno, California and issuing a preliminary injunction enjoining defendant from proceeding with the arbitration during the pendency of the litigation and from engaging in anti-competitive practices aimed at interfering with the plaintiff's ability to earn a livelihood. Defendant appeals.

Defendant presents arguments addressing seven out of eighteen assignments of error. The remaining assignments of error are deemed abandoned. N.C. R. App. P. 28(a).

[1] Defendant appeals from an interlocutory order. An appeal from an interlocutory order is generally barred unless "the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review." *Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 118, 516 S.E.2d 879, 881, *disc. review denied*, 350 N.C. 832, 539 S.E.2d 288 (1999), *cert. denied*, 528 U.S. 1155, 145 L. Ed. 2d 1072 (2000) (internal quotation omitted). Our courts have held that an order denying arbitration affects a substantial right. *Id.* Accordingly, defendant's appeal is properly before us.

[2] Defendant first argues the trial court did not have jurisdiction to stay the pending arbitration proceeding because plaintiff's challenge to whether defendant was a valid assignee of Cam Data/Cam Commerce's rights under the non-compete agreement is an issue which must be determined by the arbitrator rather than the trial court. At oral argument, plaintiff conceded that the non-compete agreement from which this dispute arises involves interstate commerce. Thus, we review this issue pursuant to the provisions of the Federal Arbitration Act ("FAA"). *Boynton v. ESC Med. Sys., Inc.*, 152 N.C. App. 103, 107-08, 566 S.E.2d 730, 733 (2002) (contracts involving interstate commerce are governed by the FAA).

It is well settled under the FAA that a trial court has jurisdiction to stay arbitration proceedings pursuant to contract only upon grounds that "relate specifically to the arbitration clause and not just

to the contract as a whole." *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 636 (4th Cir.) (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)), *cert. denied*, 537 U.S. 1087, 154 L. Ed. 2d 631 (2002). In other words, in cases where parties dispute whether their claims are subject to binding arbitration, a trial court's jurisdiction under the FAA is limited to determining issues related to the making and performance of the agreement to arbitrate. *Id.* at 636-37. Where a party challenges the enforceability or validity of the contract containing the arbitration clause as a whole, it is within the exclusive jurisdiction of the arbitrator to determine those claims. *Id.* at 637 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 18 L. Ed. 2d 1270, 1277 (1967) (holding that, pursuant to the FAA, arbitration clauses are severable from the contracts in which they are included and thus, a broad arbitration clause encompasses arbitration of claims that the contract itself is not enforceable)).

This rule has come to be known as the severability doctrine. *Id.* at 637. The severability doctrine has been applied to claims that an entire contract was unenforceable due to unconscionability or fraud. *See Prima Paint*, 388 U.S. at 404, 18 L. Ed. 2d at 1277 (claim of fraud in the inducement of the contract generally must be considered by arbitrator, not trial court); *Snowden*, 290 F.3d at 637 (allegations of usurious rates of interest and nonlicensure not related to making of arbitration agreement); *Eddings v. S. Orthopedic & Musculoskeletal Assocs., P.A.*, 147 N.C. App. 375, 384, 555 S.E.2d 649, 655 (2001), *rev'd on other grounds*, 356 N.C. 285, 569 S.E.2d 645 (2002) (claim of unconscionability not directed towards the arbitration provision itself must be decided by arbitrator).

The trial court found, "that as between the plaintiff and the defendant, there exists no agreement to arbitrate the parties' disputes, inasmuch as Cam Data [now known as Cam Commerce] did not assign its rights under the [non-compete agreement]." Defendant argues the severability doctrine applies in this case, as well, because a determination of whether a contract was assigned to a third party goes to the validity of the contract as a whole and not to the making or performance of the agreement to arbitrate. We disagree.

"The question of whether a valid agreement to arbitrate exists" is an issue properly before the trial court. *Snowden*, 290 F.3d at 637. Generally, "if a party never assented to the overall contract containing the arbitration provision, then the party never assented to the arbitration provision." *Id.* Thus, the trial court "is required to decide

the assent issue even though the issue goes to the making of the entire agreement." *Id.*

In this case, plaintiff entered the contract with Cam Data, now known as Cam Commerce, and for the sake of argument, its successors or assignees.[1] Thus, by implication, plaintiff's assent to arbitrate was limited to disputes arising under the contract with Cam Data/Cam Commerce or Cam Data/Cam Commerce's valid successors or assignees. *See id.* It was, therefore, within the province of the trial court to consider the question of whether defendant was Cam Commerce's valid successor or assignee, as such a question goes directly to the issue of whether the parties' assented to arbitrate their claims. Defendant's assignment of error to the contrary is overruled.

**[3]** Next, defendant contends the trial court's findings do not support its conclusion that Cam Commerce did not assign its rights under the non-compete agreement to defendant. After careful review, we hold there is competent evidence in the record to support the trial court's determination.

"The party seeking to compel arbitration must prove the existence of a mutual agreement to arbitrate." *Boynton*, 152 N.C. App. at 110, 566 S.E.2d at 734 (internal quotation omitted). In this case, defendant offered into evidence a copy of the non-compete agreement entered into by Cam Commerce and plaintiff, titled "Employee Confidentiality & Property Rights Agreement," and an affidavit by its chief executive officer stating that among the assets it purchased from Cam Commerce pursuant to the asset purchase agreement was Cam Commerce's rights under the non-compete agreement with plaintiff. The trial court determined that these documents were insufficient to prove the existence of an agreement to arbitrate between the parties. We agree.

"It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). Whether a contract was validly assigned to a third party is an

---

1. The trial court notes that there is no reference to Cam Data's heirs, successors, or assigns anywhere in the non-compete agreement and that the document provides solely for arbitration of disputes between Cam Data and "employee." However, despite these observations, the trial court made no ruling regarding the assignability of the non-compete agreement.

issue of contract interpretation, and thus, is characterized as a conclusion of law. *See Parkersmith Properties v. Johnson*, 136 N.C. App. 626, 632, 525 S.E.2d 491, 495 (2000).

The trial court made the following findings of fact to support its conclusion that Cam Commerce did not assign its rights under the non-compete agreement to defendant:

14. In or about March of 1998, plaintiff accepted employment with Access Retail Management ("Access"), a business division of Cam Data Systems, Inc. ("Cam Data") [now known as Cam Commerce Solutions, Inc. ("Cam Commerce")], a Delaware corporation.

. . .

19. On or about May 28, 2002, Cam Commerce sold the assets of Access to defendant pursuant to an Asset Purchase Agreement. A copy of the Asset Purchase Agreement filed with the Securities and Exchange Commission reveals that Cam Commerce had no employment agreements of any sort with any of the Access employees at the time Cam Commerce sold the assets of Access to defendant and, by implication, there were no non-competition agreements with Access employees which were to be the subject of the Asset Purchase Agreement . . . .

. . .

21. On or about May 28, 2002, plaintiff was orally notified of the asset purchase and was further notified that defendant Private Business intended to employ plaintiff through its RMSA division. Plaintiff decided within a matter of weeks that he could not continue with the employment relationship.

. . .

24. On or about July 23, 2002, defendant's in-house counsel sent plaintiff correspondence in which counsel stated, on behalf of plaintiff, "As you area [sic] aware, PBI acquired Access, a division of CAM DATA Systems on May 28, 2002. In the acquisition, PBI acquired all rights, title and interests in the employees of Access from Cam, including all existing employee contracts," notwithstanding the fact that Cam and defendant had agreed that Cam had not assigned employment contracts with its employees. In addition, the letter demanded that the plaintiff refrain from

engaging in any competitive business for a period of two years subsequent to July 31, 2002.

25. Enclosed with the letter was a document captioned, "CAM DATA SYSTEMS, INC. EMPLOYEE CONFIDENTIALITY AND PROPERTY RIGHTS AGREEMENT" and bearing a signature purporting to be the plaintiff's. For purposes of the hearing, plaintiff does not refute that he signed the document. The document makes no reference to Cam's heirs, successors, or assigns. Section 10 of the document provides for the arbitration of disputes between Cam and "EMPLOYEE" in Orange County, California.

. . .

32. Having heard the positions of both parties, the Court summarily concludes that as between the plaintiff and the defendant, there exists no agreement to arbitrate the parties' disputes, inasmuch as Cam Data did not assign its rights under the document captioned "CAM DATA SYSTEMS, INC. EMPLOYEE CONFIDENTIALITY AND PROPERTY RIGHTS AGREEMENT."

Defendant argues the representation and warranty made by Cam Commerce in the asset purchase agreement that it "has no employment agreements with its employees" does not imply that Cam Commerce did not intend to assign its rights under a non-compete agreement with one of its employees to defendant. Defendant asserts that an affidavit from its chief executive officer stating that the non-compete agreement was assigned to defendant, coupled with the non-compete agreement being sent to it by Cam Commerce in response to a due diligence request made in connection with the asset purchase agreement, supports this contention and compels a conclusion that Cam Commerce did assign its rights under the non-compete agreement to defendant.

A finding of fact may be supported by competent evidence even if there is evidence to the contrary in the record. *Lumbee River Elec. Membership Corp. v. City of Fayetteville*, 309 N.C. 726, 741, 309 S.E.2d 209, 219 (1983). Despite the contrary evidence presented by defendant, there is also evidence in the record to show that in addition to the representation made by Cam Commerce in the asset purchase agreement that it had no employment agreements with its employees, defendant specifically made an assertion that it did not assume "any debt, account payable, liability, obligation, ***agreement***,

***contract*,** or lease" of Cam Commerce that was not specifically listed in an attached exhibit[2]. (Emphasis added). Furthermore, the asset purchase agreement stated that Cam Commerce was required to deliver to defendant copies of all documents "affecting or relating to the Business," and not just those assigned to and assumed by the defendant. Thus, delivery of the non-compete agreement with plaintiff to defendant does not necessarily evidence an intent by Cam Commerce to assign its rights under the non-compete agreement to defendant. Accordingly, we hold the trial court's findings are supported by competent evidence and those findings support its conclusion that Cam Commerce did not assign its rights under the non-compete agreement with plaintiff to defendant.

**[4]** Finally, defendant argues the trial court erred by granting plaintiff's motion for a preliminary injunction. The preliminary injunction in this case enjoined the defendant, during the pendency of the litigation, from "proceeding with arbitration and from engaging in [anti-]competitive practices aimed at interfering with the plaintiff's ability to earn a livelihood . . . ."

A preliminary injunction may be issued only "(1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 577, 561 S.E.2d 276, 281 (2002), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 113 (2003) (internal quotation omitted). "[W]hile this Court is not bound by the findings or ruling of the lower court [issuing the preliminary injunction], there is a presumption that the lower court's decision was correct, and the burden is on the appellant to show error." *Id.* at 578, 561 S.E.2d at 281-82. Defendant has failed to carry its burden to show error in this case.

Defendant first contends that plaintiff failed to show a likelihood of success on the merits of his case. Plaintiff sought judgment declaring the non-compete agreement unenforceable by defendant. Since there was competent evidence in the record to support the trial court's conclusion that Cam Commerce did not assign its rights under the non-compete agreement with plaintiff to defendant, it is likely

---

2. Notably, defendant neglected to submit to the trial court or to this Court a copy of the exhibit which lists the assumed leases and contracts under the asset purchase agreement between Cam Commerce and defendant.

that plaintiff will succeed on this claim. Accordingly, defendant's assignment of error is overruled.

Defendant next contends that plaintiff failed to show that he would suffer irreparable injury if the injunction was not issued. The record indicates that if defendant were not enjoined from proceeding with the pending arbitration, conducted in Fresno, California, plaintiff would lose his right to have his dispute determined exclusively by the courts of this state and would have to undergo considerable expense and inconvenience responding to proceedings in another state. Moreover, plaintiff asserted in his verified complaint that he has spent thirty years investing substantial time, energy, and personal services to the development of a client base upon which his livelihood is based. This client base would reasonably be at risk if defendant were permitted to engage in anti-competitive practices aimed at interfering with plaintiff's ability to earn a livelihood. Accordingly, plaintiff made a sufficient showing that he would suffer irreparable harm for which there is no adequate remedy at law without the issuance of the preliminary injunction.

Affirmed.

Judges HUDSON and GEER concur.