TALLY EDDINGS, M.D., Plaintiff v. SOUTHERN ORTHOPAEDIC AND MUSCULOSKELETAL ASSOCIATES, P.A., Defendant

No. COA03-1298

(Filed 21 December 2004)

1. Arbitration and Mediation— employment agreement— interstate commerce—Federal Arbitration Act

   The trial court did not err by concluding that the employment agreements and transactions between the parties involved interstate commerce and therefore require the application of the

Federal Arbitration Act, because: (1) the trial court's findings of fact are sufficient to support its conclusion; and (2) defendant employer provided evidence to demonstrate that it treats patients who live in other states, receives payments from insurance carriers outside of North Carolina, and receives goods and services from out-of-state vendors.

**2. Arbitration and Mediation— employment agreement—compelling arbitration of entire dispute**

The trial court erred by failing to dismiss plaintiff's complaint and compel arbitration as to the entire dispute regarding the validity of an employment contract, because: (1) arbitration is the forum to which both plaintiff and defendant consented to hear any dispute surrounding the contract; and (2) claims such as rescission, no meeting of the minds, and quantum meruit directly challenge the validity of the contract, and therefore, such claims are within the jurisdiction of the arbitrator.

Appeal by plaintiff and defendant from judgment filed 23 June 2003 by Judge Philip Ginn in Buncombe County Superior Court. Heard in the Court of Appeals 16 June 2004.

*Kelly & Rowe, P.A., by E. Glenn Kelly, for plaintiff-appellant.*

*McGuire, Wood & Bissette, P.A., by T. Douglas Wilson, Jr., for defendant-appellant.*

BRYANT, Judge.

On 16 November 1997, Tally Eddings, M.D. (Dr. Eddings or plaintiff) and Southern Orthopaedic and Musculoskeletal Associates, P.A. (SOMA) entered into a contract of employment. On 1 January 1998, Dr. Eddings and SOMA subsequently entered into a non-shareholder physician employment agreement which replaced the earlier contract of employment. Plaintiff signed both SOMA agreements which contained the following arbitration provision:

(10) <u>Dispute Resolution by Arbitration</u>. Any controversy, dispute, or disagreement arising out of or relating to the Agreement, including the breach thereof, shall be settled exclusively by binding arbitration, which shall be conducted in a location to be mutually agreed upon by the parties, or at the principal office of the corporation, in accordance with the [American] Health Lawyers Association Alternative Dispute Resolution Service

Rules of Procedure for Arbitration, and which to the extent of the subject matter of the arbitration, shall be binding not only on all parties to this Agreement, but on any other entity controlled by, in control of, or under common control with the party to the extent that such affiliate joins in the arbitration, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Any arbitrator so appointed shall have the express authority, but not the obligation, to award attorney's fees and expenses to the prevailing party in any such proceeding.

Dr. Eddings subsequently moved from Tennessee to Buncombe County, North Carolina. From 17 August 1998 until 4 January 2000 he worked as an orthopaedic surgeon for SOMA pursuant to the SOMA employment contract. The SOMA employment contract required a written six month notice of termination of employment by Dr. Eddings. Further, the agreement required Dr. Eddings to give preliminary notice of resignation twelve months prior to the effective date of termination. Dr. Eddings was also bound by a 'covenant not to compete' provision in his employment contract which prevented him from practicing orthopaedic medicine within a 50-mile radius of SOMA for five years after termination of employment.

With insufficient notice, Dr. Eddings terminated his employment effective immediately in a 4 January 2000 letter of resignation to SOMA, citing employment concerns. Following his resignation from SOMA, Dr. Eddings began practicing with another orthopaedic practice in Asheville in violation of the 'covenant not to compete' provision of the employment contract.

On 25 February 2000, SOMA requested arbitration through American Health Lawyers Association for plaintiff's alleged breach of the employment contract. On 9 March 2000, plaintiff filed a complaint in the Superior Court of Buncombe County alleging fraud, breach of fiduciary duty, and various other claims for relief seeking (1) rescission of his employment contract with SOMA, (2) an injunction enjoining SOMA's arbitration and (3) a declaratory judgment that no enforceable contract existed between plaintiff and SOMA. On 31 March 2000, plaintiff filed an amended complaint pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure, adding a tenth claim for relief seeking a declaratory judgment that plaintiff's non-shareholder physician employment contract with defendant was against public policy, unconscionable, and unenforceable.

On 28 March 2000, SOMA filed a motion to compel arbitration and dismiss the complaint, seeking to enforce the arbitration provision contained in plaintiff's employment agreement. On 31 March 2000, plaintiff filed a motion to stay the arbitration scheduled for 26 April 2000. On 30 July 2000, the trial court denied SOMA's motion to compel arbitration and granted plaintiff's motion to stay arbitration. SOMA appealed the 30 July 2000 order staying arbitration to this Court. On appeal, this Court reversed the decision of the trial court, holding that (1) a valid agreement to arbitrate exists between Dr. Eddings and SOMA; (2) the arbitration provision is governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (1999) and applicable federal law; and (3) Dr. Eddings' claims for rescission and declaratory relief based on fraud, unconscionability, and indefiniteness resulting in no meeting of the minds should be submitted to the arbitrator, pursuant to *Prima Paint Corp. v. Flood & Conklin*, 388 U.S. 395, 18 L. Ed. 2d 1270 (1967), because those claims were directed to the entire employment agreement and not just the arbitration provision itself. *Eddings v. S. Orthopedic & Musculoskeletal Assocs.*, 147 N.C. App. 375, 555 S.E.2d 649 (2001) (hereinafter *Eddings I*).

In a dissenting opinion in *Eddings I*, Judge Greene stated that while he agreed with the majority that under the FAA, the claims at issue should be referred to arbitration, the decision to apply the FAA was a matter for the trial court to initially determine. The North Carolina Supreme Court, agreeing with Judge Greene's dissent, held that the trial court, not the Court of Appeals, must first determine whether or not the FAA was applicable. *Eddings v. S. Orthopedic & Musculoskeletal Assocs.*, 356 N.C. 285, 569 S.E.2d 645 (2002) (per curiam).

On remand, the Superior Court of Buncombe County issued an order on 23 June 2003 which allowed in part and denied in part defendant's supplemental motion to compel arbitration. Further, some of plaintiff's claims were ordered to arbitration, while some claims were reserved for the trial court. The trial court made the following conclusions of law:

1. The transaction and Agreements between the parties involve interstate commerce and are, therefore, controlled by the Federal Arbitration Act.

2. Plaintiff's Prayers for Relief No. 1 (rescission of the contract), No. 2 (no meeting of the minds and unenforceable due to the

vagueness and uncertainty), and No. 9 (quantum meruit) are not arbitrable . . . .

3. Plaintiff's Prayers for Relief No. 3 (actual and punitive damages for alleged fraud), No. 4 (G.S. 75-1.1[attorney fees]), No. 7 (covenant not to compete), No. 8 (unconscionable as against public policy and praying for rescission) and No. 10 (unconscionable as against public policy and praying for declaration as null and void), are arbitrable . . . .

Also on remand, plaintiff was granted leave by the trial court to amend his complaint to add: (1) that the Rules of the American Health Lawyers Association Alternative Dispute Resolution Service violate constitutional rights by prohibiting the arbitrator's award of "consequential, exemplary, incidental, punitive or special damages" and; (2) that plaintiff will be deprived of access to the courts with respect to his claims for declaratory relief because arbitrators may not grant such relief.

On 22 July 2003 plaintiff and defendant respectively filed notices of appeal to this Court.

––––––––––––––

On appeal plaintiff and defendant raise two issues: whether the trial court erred in: (I) concluding that the agreements and transactions between Eddings and SOMA involved interstate commerce and therefore require the application of the Federal Arbitration Act and (II) compelling arbitration as to some, but not all the disputed issues.

I

**[1]** The first issue is whether the trial court erred in concluding that the agreements and transactions between Eddings and SOMA involved interstate commerce and therefore require the application of the Federal Arbitration Act.

In *Eddings I*, this Court applied the FAA to reach the conclusion that a valid arbitration agreement existed between Eddings and SOMA and that the issues before the Court were covered by the language of the arbitration agreement and must be submitted to an arbitrator for resolution. *Eddings v. S. Orthopedic & Musculoskeletal Assocs.*, 147 N.C. App. 375, 383, 555 S.E.2d 649, 654 (2001).

In summary, we hold that a valid agreement to arbitrate exists between plaintiff and SOMA and that the grounds relied upon

by the trial court in refusing to enforce this arbitration agreement are issues which are covered by the language of the parties' agreement to arbitrate and must be submitted to an arbitrator . . . .

*Id.* at 384, 555 S.E.2d at 655.

The North Carolina Supreme Court in adopting the dissenting opinion in *Eddings I* did not specifically address the Court of Appeals' conclusions as to the validity of the agreement or the scope of the dispute. These conclusions, however, were dependant upon a determination that the transaction involved interstate commerce and therefore the FAA applied. In *Eddings I* the dissenting opinion as adopted by the North Carolina Supreme Court stated:

Before the FAA applies to a contract, the contract must either relate to a maritime transaction or evidence "a transaction involving commerce." 9 U.S.C. §2 (2000). Whether a contract "evidenced 'a transaction involving commerce' within the meaning of §2 of the [FAA]" is a question of fact which an appellate court should not initially decide. *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n*, 387 F.2d 768, 772 (3d Cir. 1967).

*Id.* at 385, 555 S.E.2d at 656.

On remand, the trial court made the following findings of fact pertinent to evidencing interstate commerce and supporting the determination that the FAA applied to this controversy:

2. Plaintiff traveled from . . . Tennessee to . . . North Carolina to interview with . . . [and accept] the offer of employment with [SOMA]. . . .

3. SOMA treats patients that reside in a number of different states . . . .

4. While employed by SOMA, Dr. Eddings personally treated patients that reside in a number of different states . . . .

5. A large portion of SOMA's physician fees are paid on behalf of SOMA's patients by medical insurance companies, including out-of-state and multi-state insurance carriers . . . located in a number of different states . . . .

6. During the time that Dr. Eddings was employed by SOMA, he personally treated patients for whom SOMA received fee

payments for out-of-state and multi-state insurance carriers. These insurance carriers are located in a number of different states . . . .

7. SOMA purchases supplies and services . . . from a variety of vendors located within and without the state of North Carolina . . . .

8. Dr. Eddings provided services and generated revenue that facilitated SOMA's various interstate activities . . . .

9. The American Health Lawyers Association Alternative Dispute Resolution Service (AHLAADRS) is the organization specified by the parties' contracts as the organization to arbitrate 'any dispute, controversy, or disagreement arising out of or relating to this Agreement, including the breach thereof . . . .' Section 6.06 of the AHLAADRS rules states that there is no claim available for and the arbitrator 'may not award consequential, exemplary, incidental, punitive or special damages . . . ,' while at the same time section 1.05 provides that the provisions within the rules and any exceptions thereto are subject to the applicable law, and if there is a difference in interpretation among the parties, the arbitrator shall interpret and apply the rules.

The trial court's findings of fact are sufficient to support its conclusion that the agreements and transactions between Dr. Eddings and SOMA involve interstate commerce, and therefore the FAA applied. *See also, Whitley v. Carolina Neurological Assocs., P.A.*, No. 1:01-CV-00105, 2002 WL 1009721, at *2 (M.D.N.C. Feb. 6, 2002) (the transaction in fact involves interstate commerce when a doctor from Louisiana moved to North Carolina and through the medical practice treats patients from other states, accepts payments from out-of-state and multi-state insurance carriers, and receives goods from out-of-state vendors); *Jones v. Tenet Health Network, Inc.*, U.S. Dist. LEXIS 5037, 6 Am. Disabilities Cas. (BNA) 1307(1997) (motion to stay discrimination action pending arbitration was granted in employer's favor pursuant to agreement to arbitrate when (1) employer was engaged in interstate commerce, (2) employee freely consented to agree to arbitrate, (3) employee did not lack the capacity to consent to arbitration, and (4) employee failed to show such agreement to arbitrate was for an unlawful purpose); *Crawford v. West Jersey Health Sys.*, 847 F. Supp. 1232, 1240, 1994 U.S. Dist. LEXIS 4181, at *21 (D.N.J. 1994) (employer's motion to stay the wrongful discharge action was granted in part, pending arbitration of doctor's employ-

ment agreement, and denied in part as to the doctor's motion for leave to amend the complaint).

SOMA's contract with Dr. Eddings involved interstate commerce. SOMA has provided evidence to demonstrate that it treats patients who live in other states, receives payments from insurance carriers outside North Carolina, and receives goods and services from out-of-state vendors. Therefore, the trial court did not err in determining Dr. Eddings and SOMA were engaged in interstate commerce and the FAA applied.

II

[2] The next issue is whether the trial court erred by failing to dismiss plaintiff's complaint and compel arbitration as to the entire dispute.

It is well settled under the FAA that a trial court has jurisdiction to stay arbitration proceedings pursuant to contract only upon grounds that "relate specifically to the arbitration clause and not just to the contract as a whole." *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 636 (4th Cir.) (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)), *cert. denied*, 537 U.S. 1087, 154 L. Ed. 2d 631 (2002). Where a party challenges the enforceability or validity of the contract containing the arbitration clause as a whole, it is within the exclusive jurisdiction of the arbitrator to determine those claims. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 18 L. Ed. 2d 1270, 1277 (1967) (holding pursuant to the FAA arbitration clauses are severable from the contracts in which they are included and thus, a broad arbitration clause encompasses arbitration of claims that the contract itself is not enforceable)); *See also Keel v. Private Bus., Inc.*, 163 N.C. App. 703, 708, 594 S.E.2d 796, 798 (2004). "The trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, reviewable de novo by the appellate court." *Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001), citing *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). Our Court has adopted the *PaineWebber* analysis with respect to whether a dispute is subject to arbitration. The determination of whether a dispute is subject to arbitration involves a two pronged analysis; the court must ascertain both (1) whether the parties had a valid agreement to arbitrate, and (2) whether the specific dispute falls within the substantive scope of that agreement. *Raspet*, 147 N.C. App. at 137, 554 S.E.2d at 678.

**EDDINGS v. SOUTHERN ORTHOPAEDIC & MUSCULOSKELETAL ASSOCS.**

[167 N.C. App. 469 (2004)]

The first prong of the analysis is satisfied as the parties clearly have an agreement to arbitrate pursuant to the SOMA employment contract. As to the second prong, we must determine whether the claims fall within the scope of the agreement. In reviewing plaintiff's complaint, the trial court compelled to arbitration the following claims: actual and punitive damages for alleged fraud; attorney's fees; covenant not to compete; the contract was unconscionable as against public policy and praying for rescission; the contract was unconscionable as against public policy and praying for declaration as null and void.

Plaintiff argues that because the trial court compelled to arbitration these disputes, he will be deprived of substantial rights such as due process because an arbitrator, rather than a court of law will adjudicate this dispute. However, in the agreement between plaintiff and defendant, both parties mutually consented to arbitration. Agreeing to arbitration does not, by itself, prejudice plaintiff or prevent plaintiff from being heard in the appropriate forum. In this case, arbitration is the forum to which both plaintiff and defendant consented to hear any dispute surrounding the contract. As stated in the parties' agreement: "Any controversy, dispute, or disagreement arising out of or relating to the Agreement . . . shall be settled **exclusively** by binding arbitration . . . ." (emphasis added). To that end, there is no indication as to how the arbitrator will resolve the substantive issues in controversy or whether the remedies that plaintiff seeks apply.

Despite the agreement to arbitrate, however, the trial court did not compel to arbitration plaintiff's prayers for relief: rescission of the contract; no meeting of the minds; and quantum meruit. Clearly the agreement to arbitrate the instant case is a broad one. Accordingly, based on *Prima Paint*, claims such as rescission, no meeting of the minds, and quantum meruit directly challenge the validity of the contract. Therefore such claims are within the jurisdiction of the arbitrator. This does not diminish the superior court's jurisdiction as to any claims unresolved through arbitration. *See Adams v. Nelson*, 313 N.C. 442, 446, 329 S.E.2d 322, 324 (1985) (holding an "agreement to arbitrate does not cut off a party's access to the courts and further [holding] that the court that compels arbitration does not lose jurisdiction."); *See also Henderson v. Herman*, 104 N.C. App. 482, 409 S.E.2d 739 (1991). Based on the trial court's determination that the agreement and transactions between plaintiff and defendant involve interstate commerce, failure to send all

issues in controversy to arbitration was error. Therefore the decision of the trial court as to those claims not sent to arbitration must be reversed.

We affirm in part and reverse in part.

Judges TYSON and STEELMAN concur.