IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-429

Filed: 21 March 2017

Forsyth County, No. 15 CVS 3771

MICAH TERRELL, Plaintiff,

v.

KERNERSVILLE CHRYSLER DODGE, LLC, Defendant.

Appeal by defendant from order entered 17 December 2015 by Judge David L. Hall in Superior Court, Forsyth County. Heard in the Court of Appeals 6 October 2016.

*Public Justice, P.C., by Leah M. Nicholls, pro hac vice, and Norris Law Firm, PLLC, by J. Matthew Norris, for plaintiff-appellee.*

*Jeffrey F. Hutchins for defendant-appellant.*

STROUD, Judge.

Defendant Kernersville Chrysler Dodge, LLC ("defendant") appeals from the trial court's order denying defendant's motion to compel arbitration. Because the trial court failed to include any findings of fact in its order denying defendant's motion, we must reverse its order and remand for the trial court to make findings and conclusions on the motion.

Facts

Plaintiff's complaint set forth the following allegations. On 23 April 2015, plaintiff contacted defendant about a vehicle defendant had advertised for sale ("the vehicle"). Plaintiff placed a $500.00 hold on the vehicle over the phone, and defendant's employee, Larissa Santos, provided plaintiff with information and photographs of the vehicle. Plaintiff also gave Ms. Santos several questions to ask the service department about the vehicle's condition. Ms. Santos contacted plaintiff the following day and let him know that his questions had been given to the service department and that the vehicle was currently being serviced. Ms. Santos gave plaintiff a price quote for the vehicle, and on 25 April 2015, plaintiff drove down from Charlottesville, Virginia, for a test drive and, if he decided to buy it, to complete his purchase of the vehicle.

After arriving, plaintiff met salesperson Brandon Widener and took the car for a test drive. During the test drive, plaintiff noticed a noise coming from the engine compartment and brought it to Mr. Widener's attention, who took the vehicle to one of defendant's mechanics for an inspection. After approximately two hours, plaintiff was told that the " 'tensioner pulley' " was causing the noise and that the part had been replaced. Plaintiff alleged that defendant "assured [p]laintiff that the Vehicle had undergone a thorough inspection prior to sale, that it was a safe Vehicle, and that there were no major structural or mechanical problems." Relying on those representations, plaintiff purchased the vehicle and drove it home.

On the way home, plaintiff noticed "some slight issues with the steering and the u-joint/ball joint/axle area." Shortly after getting back home, plaintiff contacted defendant about these issues and let Ms. Santos know that he planned to have the issues looked at by a repair shop in Charlottesville. Plaintiff dropped the vehicle off on 30 April 2015, and two days later, the repair shop told plaintiff that the vehicle "had significant 'frame rot', caused by rust and decay over the entire underside frame and engine mount." Because of this issue, the vehicle would not pass a Virginia State Inspection and was unsafe to drive.

Plaintiff filed his complaint on 25 June 2015, alleging defendant engaged in unfair and deceptive trade practices, fraud, and breach of an express warranty. Defendant initially filed a *pro se* answer denying the material allegations in plaintiff's complaint, which was stricken by the trial court on 1 September 2015. Defendant then filed a new answer on 17 September 2015, followed by a motion to compel arbitration on 13 November 2015. Defendant attached to the motion copies of the documents it alleged were the governing arbitration agreement and the retail purchase agreement. The copy of the retail purchase agreement -- as attached by defendant – appears to be signed and dated by plaintiff. The form has two signature lines for "purchaser" at the bottom left side and the signature appears on one of the lines. There are two additional blank lines at the bottom of the form on the right. The top line is labeled as "salesperson" and is filled in with the typewritten name

"Brandon P. Widener." The bottom line is labeled "accepted by authorized dealership representative" and the handwritten initials "RCM" appear above this line. We also note that it is not clear if the retail purchase agreement as it appears in our record has only one page or if the "Governing Arbitration Agreement" is a separate form, although the arbitration agreement may be on the reverse side of the retail purchase agreement.[1] One section of the retail purchase agreement, entitled "OTHER MATERIAL UNDERSTANDINGS AND INCORPORATED DOCUMENTS" has a provision which states as follows:

> 4. I understand that any dispute arising from, or relating to this transaction, shall be settled by neutral arbitration pursuant to the GOVERNING ARBITRATION AGREEMENT signed by my hand and incorporated into this Agreement.
>
>> (CONTINUED ON THE REVERSE SIDE OF THIS AGREEMENT)
>
> I HAVE BEEN GIVEN AMPLE OPPORTUNITY TO EXAMINE THIS ENTIRE RETAIL PURCHASE AGREEMENT, FRONT AND BACK, AND I HEREBY ACCEPT THE TERMS AND CONDITIONS INCLUDING THOSE LISTED ON THE REVERSE SIDE OF THIS AGREEMENT.

The retail purchase agreement also has the following provision just above the signature lines:

---

[1] We are unable to determine if the arbitration agreement is on the reverse side of the retail purchase agreement because only one of the three copies in our record presents the document in this manner. But based upon the provisions of paragraph 4 of the retail purchase agreement, it appears that the arbitration agreement was probably on the reverse side.

> I HEREBY ACKNOWLEDGE THIS AGREEMENT IS
> COMPLETE AND ACCURATELY REFLECTS ANY AND
> ALL RELATED DOCUMENTS SIGNED BY MY HAND
> AND REFERENCED AS INCORPORATED INTO THIS
> AGREEMENT BETWEEN THE DEALERSHIP AND
> MYSELF.
>
> I ACKNOWLEDGE RECEIPT OF A COPY OF THIS
> AGREEMENT WITH THE UNDERSTANDING THIS
> AGREEMENT IS NOT BINDING UPON THE
> DEALERSHIP OR PURCHASER(S) UNTIL SIGNED BY
> AN AUTHORIZED DEALERSHIP REPRESENTATIVE.

The arbitration agreement states at the beginning as follows:

> This Governing Arbitration Agreement shall be
> incorporated into the vehicle purchase/lease contract
> executed as of the date recorded below and is between the
> "Purchaser(s)" and the "Retailing Dealership" listed below
> herein referred to as the "Parties."

The copy of the arbitration agreement attached to the defendant's motion has two signature lines for "purchaser" at the bottom left and the top line was signed by plaintiff. The form has two signature lines at the bottom right side. The top line is labeled "RETAILING DEALERSHIP" and is filled in with typewritten "KERNERSVILLE CHRYSLER DODGE JEEP." The bottom signature line is labeled "DEALERSHIP REPRESENTATIVE" and is blank.

At a hearing on the motion to compel arbitration on 7 December 2015, defendant presented evidence in support of the motion and counsel for both parties made arguments. Defendant called Ronald Craig McCullough to testify at the hearing, who explained that he was one of defendant's finance managers at the time

of the sale of the vehicle to plaintiff. Mr. McCullough testified that his initials, "RCM," were on the retail purchase agreement. However, another copy of the retail purchase agreement in the addendum to the record, apparently Plaintiff's copy of the retail purchase agreement, shows no signature on the purchaser line for plaintiff and does not have the initials "RCM." Mr. McCullough also testified that he did not sign the governing arbitration agreement. Plaintiff argued that without a signature from the dealership on the arbitration agreement, "it creates a one-sided obligation to arbitrate disputes[,]" and plaintiff "could not compel the defendant to arbitrate a dispute that it had against him if the defendant did not have a signature agreeing to arbitrate."

At the hearing, there was factual dispute over if and how an authorized representative for the dealership had signed the retail purchase agreement. The retail purchase agreement form was apparently a triplicate form with a white top page, a yellow middle page, and a pink last page. Plaintiff had received the yellow middle page, which is the version in the addendum to the record that has no signatures. The copy as attached to the motion by defendant had both plaintiff's signature and the initials "RCM" for the dealership. According to Mr. McCullough, the dealership normally scanned forms to be stored in a digital format and after a

period of time, the original documents are shredded.[2] But the copies of the "Governing Arbitration Agreement" are all the same, and unsigned by a dealership representative.

It appears from the transcript that the trial court ultimately agreed with plaintiff and stated at the hearing that "the contract should be construed against the drafter and it is just not sufficient for this Court to find a binding, a mutual binding, arbitration agreement." On 17 December 2015, the court entered its order simply denying defendant's motion to compel arbitration, without any findings of fact or any explanation of the basis for the ruling. Defendant timely appealed to this Court.

Discussion

We first note that while an order denying a motion to compel arbitration is interlocutory, it is nevertheless immediately appealable, "because the right to arbitrate a claim is a substantial right which may be lost if review is delayed." *T.M.C.S., Inc. v. Marco Contractors, Inc.*, __ N.C. App. __, __, 780 S.E.2d 588, 592 (2015) (citations, quotation marks, and brackets omitted).

Defendant argues that the trial court erred by failing to find that a valid agreement to arbitrate was entered into by the parties and by not granting its motion to compel arbitration. Noting that this State "has a strong public policy favoring

---

[2] There was some discussion at the hearing by counsel regarding the dealership's document retention policies and an inspection of the defendant's records by a DMV inspector, but there was no testimony or evidence offered on these matters.

arbitration[,]" defendant contends that the parties had a valid agreement to arbitrate, claiming both parties signed "the contract which incorporated the arbitration agreement into the agreement. The plaintiff also signed the arbitration agreement. No evidence was ever presented by either party that the plaintiff failed to provide a copy of the arbitration agreement. No [e]vidence was ever presented by either party that the plaintiff did not sign the arbitration agreement or the contract."

A trial court reviewing a motion to compel arbitration must conduct "a two-step analysis . . . to ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004) (citations and quotation marks omitted). *See also T.M.C.S., Inc.*, __ N.C. App. at __, 780 S.E.2d at 593 ("When, as here, one party claims a dispute is covered by an agreement to arbitrate and the other party denies the existence of an arbitration agreement, the trial court must determine whether an arbitration agreement actually exists." (Citation and quotation marks omitted)).

> The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary. Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial court's findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate.

*Sciolino v. TD Waterhouse Inv'r Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002) (citations omitted).

In this case, the hearing transcript indicates that the trial court found plaintiff's counsel's argument regarding lack of mutuality and the ability of plaintiff to enforce the arbitration agreement against defendant to be most persuasive. The court noted that "basic contract law is that the contract should be construed against the drafter. Here the drafter is the dealership. Given the totality of the submissions before me, I am unable to conclude that there is a binding arbitration agreement." The trial judge pointed out to defendant's trial counsel that the arbitration agreement "is not signed by your client." The court then concluded:

> All right. I am denying the motion to compel arbitration because I do not find -- I find that there is no binding arbitration agreement between the parties.
> . . . .
> . . . . Again, the contract should be construed against the drafter and it is just not sufficient for this Court to find a binding, a mutual binding, arbitration agreement. I wish the parties well in resolving the matter.

The court then entered a written order on 17 December 2015. But the trial court's order simply stated, without any findings of fact:

> THIS MATTER coming to be heard, and being heard, at the December 7, 2015, civil session of the Forsyth County Superior Court, on Defendant's Motion to Compel Arbitration and the Court, having carefully considered the matters of record including pleadings, authorities and arguments of both counsel, finds that Defendant's Motion to Compel Arbitration should be denied.

NOW, THEREFORE, it is ORDERED, ADJUDGED, and DECREED as follows:

1.      Defendant's Motion to Compel Arbitration is denied.

This Court has addressed the sufficiency of written orders denying motions to compel arbitration many times. In *Cornelius v. Lipscomb*, this Court reversed an order denying a motion to compel and remanded for additional findings of fact:

> As an initial matter, defendants argue that the order denying their motion to compel arbitration is facially defective because it "contains no findings whatsoever" and does not "identify any basis for the refusal to dismiss or stay this action and compel arbitration." We agree.

> This Court has repeatedly held that an order denying a motion to compel arbitration must include findings of fact as to whether the parties had a valid agreement to arbitrate and, if so, whether the specific dispute falls within the substantive scope of that agreement. When a trial court fails to include findings of fact in its order, this Court has repeatedly reversed and remanded to the trial court for a new order containing the requisite findings.

> In this case, the trial court's order denying defendants' motion to compel arbitration stated in relevant part only:

>> Prior to ruling on the motions, the Court considered all pleadings and other materials contained in the file. The Court considered the briefs submitted by the parties with regard to the motions. Further, the Court considered the materials and testimony submitted at the hearing on the

motions. Finally, the Court considered the arguments of counsel with regard to the motions.

After consideration of all matters as set forth above in this Order, it appears to the Court that both Motions as to both Defendants should be denied.

NOW, THEREFORE, IT IS ORDERED:

1. The Defendants Sunset Financial Services, Inc. and Jeffrey Lipscomb's Joint Motion to Compel Arbitration and to Stay Court Action is denied as to both Defendants.

The order provides no findings and no explanation for the basis of the court's decision to deny the motion to compel arbitration. We, therefore, must reverse the trial court's order and remand for findings of fact regarding whether the parties had a valid agreement to arbitrate and, if so, whether the dispute between the parties falls within the substantive scope of that agreement.

*Cornelius v. Lipscomb*, 224 N.C. App. 14, 16-17, 734 S.E.2d 870, 871-72 (2012)

(citations and quotation marks omitted).

Here, as in many of the cases stated as examples in *Cornelius*, the trial court's order contained absolutely no findings and simply concluded without explanation that the motion would be denied. Although it seems from the hearing transcript that the trial judge may have determined that defendant did not sign the retail purchase agreement, the governing arbitration agreement, or both, the court did not include any findings whatsoever in its written order. It is also possible that the trial court

determined that plaintiff had not signed the retail purchase agreement, as one version of that agreement in our record is unsigned by either party. Nor did the court resolve the question of whether signatures only on the retail purchase agreement, which explicitly incorporated by reference the Governing Arbitration Agreement (which *may* have been on the reverse side of the form) would be sufficient to bind the dealership. Our review on appeal of a trial court's denial of a motion to compel arbitration is limited to the trial court's findings and conclusions of law. Accordingly, we must remand for the trial court to enter an order that clearly states its findings and conclusions supporting its decision to denying the motion to compel arbitration.

REVERSED AND REMANDED.

Judges McCULLOUGH and ZACHARY concur.